**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**DIAL CORPORATION, Defendant.**

**No. CIV. A. 99 C 3356.**

United States District Court,
N.D. Illinois.
Eastern Division.

Aug. 14, 2001.

Jean Powers Kamp, John C. Henderickson, John A. Knight, Noelle Christine Brennan, U.S. E.E.O.C., Chicago, IL, Ines M. Monte, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for U.S. E.E.O.C.

Alexis MacDowall, Winston & Strawn, Chicago, IL, Daniel V. Kinsella, Rooks, Pitts & Poust, Chicago, IL, for Jane Doe.

Kimball Richard Anderson, T. Alexis MacDowall, Winston & Strawn, Chicago, IL, James A. Burstein, Ellen E. McLaugh-

lin, Condon A. McGlothlen, Laura Anne Lindner, David Elliot Metz, Robert L. Jackson, III, Sheldon Leigh Jeter, Seyfarth Shaw, Chicago, IL, for Dial Corp.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

URBOM, Senior District Judge.

This case is now before me on a motion for summary judgment filed by the defendant, The Dial Corporation (hereinafter Dial). Filing 70. In its complaint, the plaintiff Equal Employment Opportunity Commission (hereinafter EEOC) alleges that Dial has engaged in a pattern or practice of tolerating sexual harassment and "sex-based" harassment at its Aurora, Illinois, manufacturing plant since at least July of 1988. Filing 1 ¶ 7. The EEOC seeks equitable relief, as well as compensatory and punitive damages for those women affected by Dial's unlawful employment practices. *Id.* ¶¶ A–I. Dial has moved for summary judgment with respect to both the pattern-or-practice and individual claims. After carefully reviewing the materials submitted by both parties, I find that Dial's motion will be granted in part and denied in part.

## I. Background

Beverly J. Allen, a Dial employee at the Aurora manufacturing plant, filed a Charge of Discrimination with the EEOC on February 5, 1996. Charge of Discrimination, Allen Dep. at Ex. 12 (filing 98, tab A). In this charge, Allen alleged that from 1992 until December of 1995, she had been sexually harassed by a co-worker, Paul

Jones, and that she had been retaliated against for complaining of such harassment to her supervisor.[1] *Id.* In accordance with 42 U.S.C. § 2000e–5(b), the EEOC notified Dial of the charge and began investigating Allen's allegations.

On March 16, 1998, the EEOC issued a Letter of Determination finding that it had "reasonable cause to believe that [Dial] discriminated against females, as a class, including [Beverly Allen], in that they were subjected to sexual harassment and when they complained [Dial] failed to take prompt, effective action." Letter of Determination, Banas Decl. at Ex. 1 (filing 98, tab Z). The parties then engaged in efforts to conciliate the claims. These efforts failed, and the EEOC subsequently filed suit on May 20, 1999.

In its complaint, the EEOC alleges that "[s]ince at least July 1988, [Dial] has engaged in a pattern and practice of unlawful employment practices at its facilities, in violation of Section 703(a)(1) and Section 707 of Title VII, 42 U.S.C. § 2000e–2(a)(1) and –6." Complaint ¶ 7, filing 1. According to the EEOC:

> These practices include, but are not limited to, engaging in intentional discrimination against Allen and a class of female employees by subjecting them to sexual and sex-based harassment and failing to take prompt remedial action intended to eliminate the harassment after [Dial] became aware of the illegal behavior, all in continuing violation of Section 703(a) and Section 707 of Title VII, 42 U.S.C. § 2000e–2(a) and –6.

1. Allen had first sought the assistance of the EEOC a few months earlier. On November 23, 1995, she completed a Charge Questionnaire, alleging that she had been sexually harassed by Paul Jones. Charge Questionnaire, Allen Dep. at Ex. 13 (filing 98, tab A). According to Allen, a supervisor was also harassing her, telling her that "[she] de-

serve[d] all [she] got from Paul." *Id.* During her deposition, Allen explained that she did not administratively pursue her claim at that time because she was told by the EEOC that her allegations were insufficient to support a charge. Deposition of Beverly Allen at 183:13–184:11 (filing 176, tab 2).

*Id.* In terms of equitable relief, the EEOC seeks (1) a permanent injunction barring Dial from engaging in discrimination on the basis of sex; (2) an order directing Dial "to institute and carry out policies, practices and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices"; (3) an order directing Dial to provide sexual harassment training to its officers, managers, and employees; and (4) backpay, with prejudgment interest, for the .class of female employees affected by Dial's unlawful practices, including Beverly Allen. *Id.* ¶¶ A, B, G, C. The EEOC also seeks compensatory and punitive damages on behalf of Allen and the other class members, as well as its costs. *Id.* ¶¶ D, E, F, I.

## II. Standard for Summary Judgment

A motion for summary judgment shall be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256, 257, 106 S.Ct. 2505 (citations omitted) (citing FED. R. CIV. P. 56(e)).

## III. Analysis

In moving for summary judgment, Dial asserts that the "EEOC's pattern and practice claim is deficient in numerous respects, any one of which entitles Dial to judgment as a matter of law." Defendant's Motion for Summary Judgment ¶ 9, filing 70; Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [hereinafter Defendant's Memorandum] at 1, filing 94 (contending that "[the] EEOC's case fails procedurally and substantively as a matter of law"). According to Dial, these "deficiencies" include the following: (1) the EEOC's attempt to base its pattern-or-practice claim on Beverly Allen's individual charge circumvents Title VII's administrative charge process; (2) Allen's individual charge does not provide a sufficient basis for the EEOC's pattern-or-practice claim because (a) the charge was untimely, and (b) her claim fails on the merits as a matter of law; (3) the pattern-or-practice theory of Title VII liability is not viable in sexual harassment cases generally or in this case specifically; (4) the litigation model proposed by the EEOC violates Dial's rights under the Seventh Amendment; (5) even if the EEOC's theory is cognizable under Title VII, the agency cannot show that Dial had a "standard operating procedure" of tolerating sexual harassment; (6) all or most of the individual claims for relief must fail because (a) the claims are untimely, (b) the conduct complained of does

not rise to the level of actionable sexual harassment, and/or (c) there is no basis for holding Dial liable for the conduct; (7) those class members who have executed valid Title VII releases cannot recover damages; and (8) even if there is some question as to the validity of these releases, the doctrine of ratification bars such class members from recovering damages. Defendant's Motion for Summary Judgment ¶ 9(a)-(h), filing 70. After first reviewing the elements of a hostile environment sexual harassment claim, as well as Title VII's general framework, I will discuss each of Dial's arguments below.

### A. Elements of a Hostile Environment Sexual Harassment Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e-2(a)(1). It is well-settled that "sex discrimination" includes sexual harassment that is so "severe or pervasive" as "'to alter the conditions of [the victim's] employment'" and create a hostile working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (citation omitted); *EEOC v. Mitsubishi Motor Mfg. of America, Inc.,* 990 F.Supp. 1059, 1070–71 (C.D.Ill.1998). In order to establish a prima facie case of hostile environment sexual harassment, a plaintiff must demonstrate the following:

(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment ...;[2] and (4) there is a basis for employer liability.

*Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998) (citations omitted).

In determining whether the alleged sexual harassment is severe or pervasive enough to constitute a hostile work environment, courts must consider the "totality of the circumstances." *See Meritor,* 477 U.S. at 69, 106 S.Ct. 2399; *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Factors that may be relevant in making this determination include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. In addition, the conduct at issue must be tested against both an objective and subjective standard. *See Meritor,* 477 U.S. at 67–68, 106 S.Ct. 2399; *Harris,* 510 U.S. at 22, 114 S.Ct. 367. Thus, "the trier of fact must find both that an objectively reasonable person

**2.** In *Parkins,* the Seventh Circuit stated that the work environment also had to "affect[ ] seriously the psychological well-being of the plaintiff". *Parkins v. Civil Constructors of Illinois, Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998). The Supreme Court, however, has determined that Title VII does not require "concrete psychological harm." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("So long as the environ-ment would reasonably be perceived, and is perceived, as hostile or abusive, ... there is no need for it also to be psychologically injurious." (citing *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399)). Thus, I have excluded the "serious psychological injury" component from the prima facie case. *See, e.g., Lahey v. JM Mort. Servs., Inc.,* No. 99 C 4074, 2000 WL 420851, at *3 n. 6 (N.D.Ill. April 18, 2000).

would find the environment hostile and that the victim, herself, subjectively perceived the environment as hostile." *Mitsubishi*, 990 F.Supp. at 1071 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367); *see also Faragher v. Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.").

An employer's liability for hostile environment sexual harassment depends upon whether the alleged harassers were supervisors or co-employees. *Parkins*, 163 F.3d at 1032. With respect to co-worker harassment, "employers are liable only when they have been negligent either in discovering or remedying the harassment." *See Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997) (citations omitted); *see also Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017, 1018 (7th Cir.1996) ("The liability of an employer for sexual harassment by one nonsupervisory employee of another is not strict. The plaintiff must prove that the employer was negligent in having failed to discover and prevent it." (citations omitted)). Where the harasser is a supervisor, an employer's liability is automatic "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (explaining that "[n]o affirmative defense" is available in such cases); *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275 (same). However, in those cases where the employee has not suffered any tangible job consequences, the employer may avoid liability by demonstrating "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Johnson v. West*, 218 F.3d 725, 730 (7th Cir.2000).

### B. *Title VII's General Framework*

Title VII, as originally drafted, limited the EEOC's role in eliminating unlawful employment practices to " 'informal methods of conference, conciliation, and persuasion.' " *General Tel. Co. v. EEOC*, 446 U.S. 318, 325, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also EEOC v. Harvey L. Walner & Associates*, 91 F.3d 963, 968 (7th Cir.1996) ("The goal of Title VII, as originally drafted, was to encourage the private settlement of claims as an informal means toward the end of eliminating discrimination without overburdening the courts or EEOC."). As a result, "[c]ivil actions for enforcement upon the EEOC's inability to secure voluntary compliance could be filed only by the aggrieved person." *General Tel. Co.*, 446 U.S. at 325, 100 S.Ct. 1698 (citing § 706(e), 78 Stat. 260). Recognizing that "these informal mechanisms were proving unequal to the task," Congress expanded the EEOC's enforcement powers with its 1972 amendments, which authorized the EEOC to initiate civil actions in federal court against private employers reasonably suspected of violating Title VII. *See Walner*, 91 F.3d at 967–68; *General Tel. Co.*, 446 U.S. at 325–26, 100 S.Ct. 1698; 42 U.S.C. §§ 2000e–5(f), –6(e). These amendments, however, "retained the previous emphasis on administrative resolution and conciliation of charges." *EEOC v. American Nat. Bank*, 652 F.2d 1176, 1185 (4th Cir.1981); *see* 42 U.S.C. § 2000e–5(b). Thus, before the EEOC may bring suit in federal court against a private employer, there must be a charge

filed with the EEOC, notice of the charge served on the employer, an investigation by the EEOC, a determination of reasonable cause, and an effort at conciliation. *American Nat. Bank,* 652 F.2d at 1185; 42 U.S.C. § 2000e–5(b).

Section 706 of Title VII provides that a charge may be filed "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission ...." 42 U.S.C. § 2000e–5(b). Such a charge must be filed within a certain time frame after the alleged discrimination has occurred. *See id.* § 2000e–5(e)(1). In deferral states, such as Illinois, the charge filing period is 300 days, or 30 days after the charging party receives notice that the state or local agency has terminated its proceedings, whichever is earlier. *See id.; Walner,* 91 F.3d at 968. The timely filing of an EEOC charge is not, however, "a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to waiver, estoppel, and equitable tolling under appropriate circumstances." *Hentosh v. Herman M. Finch Univ.,* 167 F.3d 1170, 1174 (7th Cir.1999) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)); *see also Mirza v. Department of Treasury,* 875 F.Supp. 513, 517 (N.D.Ill.1995) ("These administrative filing requirements [of Title VII and the ADEA] are not jurisdictional prerequisites which pose an absolute bar to suit, but rather 'conditions precedent,' similar to statutes of limitations, which are subject to equitable modification." (citing *Perkins v. Silverstein,* 939 F.2d 463, 469–70 (7th Cir.1991))).

After a charge has been filed, the EEOC notifies the employer of the charge and begins an investigation. 42 U.S.C. § 2000e–5(b), (e)(1) (requiring notice to be served on the employer within ten days after the charge is filed). The purpose of this investigation is to ascertain whether "there is reasonable cause to believe that the charge is true ...." *Id.* § 2000e–5(b). If the EEOC determines that reasonable cause does, indeed, exist, it must then engage in efforts to eliminate the offending practice through "conference, conciliation, and persuasion." *Id.* Should the EEOC's efforts to conciliate fail, it may then file a civil action in federal court. *Id.* § 2000e–5(f).

Finally, § 707 of Title VII grants the EEOC authority "to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission." *Id.* § 2000e–6(f).[3] Thus, the EEOC may institute a "pattern-or-practice" case on its own initiative, *i.e.,* by the filing of a Commissioner's charge. Such cases must "be conducted in accordance with the procedures set forth in [42 U.S.C. § 2000e–5]." *Id.*

### C. *Pattern–or–Practice Liability*

#### 1. *Compliance with Title VII's Administrative Requirements*

█ In moving for summary judgment, Dial first argues that the EEOC's attempt to base its pattern-or-practice claim on Beverly Allen's charge circumvents Title VII's administrative charge process. According to Dial, it was not properly notified of the class-based allegations against it until the EEOC issued its Letter of Determination. In addition, Dial asserts that with the exception of Beverly Allen, it was not informed of either the identity of the claimants or the facts underlying their claims at any stage during the administrative process, and was therefore denied an opportunity to engage in "meaningful con-

---

**3.** The authority to bring pattern-or-practice suits was originally vested in the Attorney General. *See* Civil Rights Act of 1964, § 707.

ciliation." *See* Defendant's Memorandum at 7, 9, filing 94. Thus, Dial concludes, EEOC's pattern-or-practice claim must fail.

In supporting its argument, Dial first directs me to the "scope-of-the-charge" doctrine, which prevents plaintiffs from basing a Title VII case on claims that are not "like or reasonably related to" the charge allegations. *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994); *see EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir.1996); *EEOC v. World's Finest Chocolate, Inc.*, 701 F.Supp. 637, 640 (N.D.Ill.1988). As a result of this doctrine, Dial asserts, "no lawsuit alleging a class-wide Title VII violation can proceed unless the employer was given notice of such a violation in the administrative charge." Defendant's Memorandum at 7, filing 94 (citing *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127–28 (7th Cir.1989); *Maclin v. Northern Telecom, Inc.*, No. 95 C 7485, 1996 WL 495558, at *3 (N.D.Ill. Aug.28, 1996); *White v. Mercy Hosp. & Med. Ctr.*, No. 93 C 7097, 1994 WL 249545, at *2 (N.D.Ill. June 7, 1994); *Latuga v. Hooters, Inc.*, No. 93 C 7709, 1994 WL 113079, at *2 (N.D.Ill. April 1, 1994); *Hoffman v. R.I. Enters., Inc.*, 50 F.Supp.2d 393, 401 (M.D.Pa.1999)). In this case, Beverly Allen's charge does not allege that any other female employees at Dial were sexually harassed. Dial also notes that on the "Notice of Charge of Discrimination" form that the EEOC sent to Dial along with Allen's charge, the box labeled "claims to be ag-

grieved" was marked, while the box labeled "is filing on behalf of another" was not marked. Finally, Dial also contends that the EEOC's investigation was not "broad-based," as it was limited to Allen's "narrow charge allegations." Defendant's Memorandum at 8, filing 94. Thus, Dial concludes, "[b]ecause Allen's charge and [the] EEOC's investigation failed to put Dial on notice of any agency intention to bring a class-wide claim, EEOC's pattern and practice claim must be dismissed." *Id.* (citation omitted). I disagree.

As an initial matter, Dial has not persuaded me that "no lawsuit alleging a class-wide Title VII violation can proceed unless the employer was given notice of such a violation in the administrative charge." *See id.* at 7; *see also* Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment [hereinafter Defendant's Reply] at 3, filing 190 ("EEOC's contention that Allen's charge gave Dial sufficient notice of its class-based pattern and practice claim is disingenuous."). As the EEOC correctly notes in its response, each of the cases on which Dial relies to support this proposition involve scenarios where a private plaintiff attempts to expand an individual charge into a class lawsuit. *See* Plaintiff EEOC's Memorandum in Opposition to Defendant Dial's Motion for Summary Judgment [hereinafter Plaintiff's Memorandum] at 41–42, 42 n. 20, filing 174.[4] Furthermore, according to the Seventh Circuit, "[the] EEOC may allege in a complaint whatever unlawful conduct it has

---

4. In its brief, Dial asserts that when the EEOC, during the course of investigating an individual charge that does not include class-wide allegations, believes that it has uncovered evidence of class-wide discrimination, " 'the procedure to be followed is for the filing of a [Commissioner's charge] and for a full EEOC investigation of that charge.' " Defendant's Memorandum at 8, filing 94. In support of its claim Dial relies on *EEOC v.*

*Bailey Co.*, 563 F.2d 439 (6th Cir.1977). *Id.* *Bailey* makes clear, however, that this procedure is to be followed "when instances of discrimination, *of a kind other than that raised by a charge filed by an individual party and unrelated to the individual party,* come to the EEOC's attention during the course of an investigation of the private party's charge . . . ." *EEOC v. Bailey Co.*, 563 F.2d 439, 448 (6th Cir.1977).

uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint." *Walner,* 91 F.3d at 968 (citing *EEOC v. United Parcel Serv.,* 860 F.2d 372, 374 (10th Cir.1988); *EEOC v. McLean Trucking Co.,* 525 F.2d 1007, 1010 n. 10 (6th Cir.1975)). Thus, "[i]t may, to the extent warranted by an investigation reasonably related in scope to the allegations of the underlying charge, seek relief on behalf of individuals beyond the charging parties who are identified during the investigation." *United Parcel Serv.,* 94 F.3d at 318 (citing *Cheek,* 31 F.3d at 500);[5] *see U.S. EEOC v. General Motors Corp.,* 826 F.Supp. 1122, 1127 (N.D.Ill.1993) (stating that "the EEOC may properly bring a claim based on discrimination against a class of individuals where such a claim arises out of the investigation of an individual charge"); *see also EEOC v. General Elec. Co.,* 532 F.2d 359, 366 (4th Cir. 1976), *cited with approval in General Tel. Co.,* 446 U.S. at 331, 100 S.Ct. 1698 ("In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.").[6]

**5.** In its reply brief, the Dial challenges the EEOC's reliance on *United Parcel Service* to support its "reasonable nexus" argument. Defendant's Reply at 3 n. 3, filing 190. According to Dial:

In that case, the charging party challenged an employer's policy prohibiting employees from wearing beards. The Seventh Circuit held that because the employer could reasonably expect that [the] EEOC's investigation would identify other employees adversely affected by the same policy, [the] EEOC could seek relief on behalf of individuals beyond the charging party. In contrast, the charging party in this case, Beverly Allen, complained solely about discrete conduct directed toward her by one co-worker, not about any broad-based policy or practice.

*Id.* I do not find Dial's argument persuasive. Although Dial suggests otherwise, the court in *United Parcel Service* did not appear to base its decision on the fact that the underlying charge included allegations relating to a particular policy, as opposed to "discrete conduct" by a co-worker.

**6.** In *General Electric Company,* the EEOC sued the General Electric Company, alleging that it had engaged in discrimination on the basis of race and sex. *General Electric Co.,* 532 F.2d at 362. The suit was predicated on two charges of racial discrimination filed with the EEOC: the first complained of racial discrimination in promotion and job transfer,

and the second alleged racial discrimination in employment. *Id.* After investigating these charges, the EEOC found "reasonable cause" to believe that the defendant had engaged in racial discrimination in its promotion and transfer practices with respect to the first complainant, but had not engaged in racial discrimination in denying employment to the second complainant. *Id.* The EEOC also determined that there was "reasonable cause" to believe the defendant had engaged in sex discrimination against women. *Id.*

After efforts to conciliate failed, the EEOC filed suit in federal court. *Id.* The defendant moved for summary judgment with respect to the sex discrimination claim, arguing that " 'no complaint based upon sex (had been) filed against the defendant ....' " *Id.* The district court granted the defendant's motion. *Id.* While agreeing that "the civil suit is related in its scope to the investigation and may include other claims of discrimination than those stated in the charge filed with the EEOC if they reasonably 'grow out' of the investigation," the district court held that "this right to include an additional claim of discrimination uncovered in the investigation in the civil suit is limited to the claims 'which might have been raised by the charging party.' " *Id.* at 363. According to the district court, "a claim of discrimination which the charging party had no standing to assert was necessarily a claim 'which could not reasonably have been expected to grow out of the charge of discrimination.' " *Id.* The court

Here, Allen alleged that she was the victim of a sexually hostile work environment. The EEOC then broadened the scope of Allen's charge by alleging that Dial engaged in a pattern or practice of tolerating sexual harassment. It seems to me that there is, indeed, a "reasonable nexus" between Allen's charge and the pattern-or-practice allegations in the EEOC's complaint. *See Walner*, 91 F.3d at 968; *General Motors Corp.*, 826 F.Supp. at 1127; *see also EEOC v. Keco Indus. Inc.*, 748 F.2d 1097, 1101 (6th Cir.

1984) ("[T]he EEOC has merely broadened the scope of the [individual's] charge by alleging that [the defendant] has engaged in sexual discrimination against all of its female employees in its assembly division. Consequently, the only difference between the EEOC's later charge and [the individual's] initial charge is the number of persons victimized by [the defendant's] allegedly discriminatory practices."). Likewise, it appears that the class-based claim could reasonably have been expected to grow out of Allen's initial

therefore concluded that since both of the complaining parties were males, neither the complaining parties nor the EEOC had standing to assert the sex discrimination claim. *Id.*

On appeal, however, the Fourth Circuit reversed. In doing so, the court initially observed that both the district court and the defendant "attach[ed] too much importance to the charges as filed ...." *Id.* at 364. The court explained as follows:

> While it is true "the EEOC is without jurisdiction to proceed (in any case) in the absence of a valid charge, * * * (t)he purpose of the charge under section 706 is only to initiate the EEOC investigation," to "trigger the investigatory and conciliatory procedures of the EEOC." The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices;" and that investigation may well "disclose, as in this instance, illegal practices other than those listed in the charge" and provide a basis for a reasonable cause determination with respect to those practices.... If the EEOC uncovers during that investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obliged to cast a blind eye over such discrimination nor to sever those facts and the discrimination so shown from the investigation in process and file a Commissioner's charge thereon, thereby beginning again a repetitive investigation of the same facts already developed in the ongoing investigation.... So long as the new discrim-

ination arises out of the reasonable investigation of the charge filed, it can be the subject of a "reasonable cause" determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

*Id.* at 365–366 (notes omitted); *see also General Tel. Co.*, 446 U.S. at 331, 100 S.Ct. 1698 ("Yet the Courts of Appeals have held that EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." (citing *General Elec. Co.*, 532 F.2d at 366; *McLean Trucking Co.*, 525 F.2d at 1010).) It seems to me that the Fourth Circuit's rationale applies with equal force here, where an individual's charge alleging that she was sexually harassed by a co-worker leads the EEOC to find reasonable cause that women, as a class, were subjected to sexual harassment. Thus, I would agree that requiring a new charge based on the EEOC's investigation would "result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a 'timely and effective remedy.' " *Id.* at 365 (notes omitted).

complaint of sexual harassment. *See, e.g., Keco Indus. Inc.,* 748 F.2d at 1101 ("[Since the] later class-based claim brought by the EEOC could have reasonably been expected to grow out of [the charging party's] individual complaint of discrimination, no new additional proceedings were necessary."). Thus, I am not persuaded that the scope-of-the-charge doctrine bars the EEOC's pattern-or-practice claim.

In its reply brief, however, Dial suggests that the EEOC's class-based action did not, in fact, grow out of its investigation of Allen's charge. According to Dial, the EEOC made no effort to identify class members until several months after it filed the present action, when it sent a letter to approximately 400 current and former female employees who had worked at the Aurora plant at any time since 1988, notifying them of the lawsuit and seeking "to identify any female employees who were affected by sex harassment and who may be entitled to recover in this lawsuit." *See* Defendant's Reply 3–4, filing 190; Defendant's Local Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue [hereinafter Defendant's Statement of Facts] ¶ 91, filing 96. Thus, Dial concludes, "[the] EEOC's pattern and practice claim is based upon the individual claimants' responses to its solicitation letter, not Allen's charge." Defendant's Reply at 4, filing 190.

I do not find Dial's argument persuasive. As an initial matter, Dial simply has not directed me to any relevant authority indicating that the EEOC violated its statutory "notice" obligation in failing to identify every class member during the administrative process.[7] *See, e.g., EEOC v. Shell Oil Co.,* 466 U.S. 54, 74, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ("[T]he principal objec-

---

7. In its briefs, Dial refers to 29 C.F.R. § 1601.12, which provides that an EEOC charge should include, *inter alia,* the name of the person making the charge and "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a). Based on this provision, Dial seems to suggest that because Allen's charge did not include the names of the other claimants, or the facts supporting their claims, the allegations of these other claimants cannot support the EEOC's pattern-or-practice theory. *See* Defendant's Memorandum at 9, filing 94. As discussed above, however, "[the] EEOC may allege in a complaint *whatever* unlawful conduct it has uncovered during the course of its investigation, provided that there is a *reasonable nexus* between the initial charge and the subsequent allegations of the complaint." *Walner,* 91 F.3d at 968 (emphasis supplied) (citations omitted); *see United Parcel Serv.,* 94 F.3d at 318; *General Motors Corp.,* 826 F.Supp. at 1127. Thus, Dial's reliance on § 1601.12 is misplaced.

Dial also seems to argue that the pattern-or-practice claim should be dismissed because the EEOC used the discovery process as a "fishing expedition" to identify potential class members. *See* Defendant's Reply at 4–5, filing 190. In support of its claim, Dial refers me to the *Walner* decision, which provides as follows:

[T]he EEOC puts the cart before the horse by suggesting that it does not need an independently sufficient charge in order to file a lawsuit and obtain the discovery through which it may uncover these additional instances of discrimination. This argument recalls the aphorism that discovery is not to be used as a fishing expedition.

*Walner,* 91 F.3d at 971–72. In *Walner,* however, the "problem [was] that [the] EEOC admitted in its response to [the defendant's] motion that it had failed to make any determinations with regard to [the underlying] charge." *Harvey L. Walner,* 91 F.3d at 970. As a result, the EEOC lacked "an independently sufficient charge" to support the class-based allegations in its complaint. *See id.* at 971; *see also id.* ("[T]he EEOC virtually conceded in its motion for reconsideration that it has no valid charge upon which to base a complaint. In that motion, [the] EEOC claims that 'the Shepard charge is the jurisdictional basis of the suit,' yet it admits that it has made no findings concerning Shepard's charge."). Here, by contrast, the EEOC's Letter of Determination indicated that there was reasonable cause to believe that Dial discriminated against females as a class, *including the charging party, Allen. See* Letter of Determination, Banas Decl. at Ex. 1 (filing

tive of the [notice] provision seems to have been to provide employers fair notice that accusations of discrimination have been leveled against them and that they can soon expect an investigation by the EEOC."); *World's Finest Chocolate*, 701 F.Supp. at 640 ("The notice requirement was 'designed to ensure that the employer was given some idea of the nature of the charge; the requirement was not envisioned as a substantive constraint on the Commission's investigative authority.'" (quoting *Shell Oil Co.*, 466 U.S. at 75, 104 S.Ct. 1621)). In addition, to the extent Dial argues that the EEOC's investigation did not actually reveal class-wide discrimination, Dial's claim must fail. During its investigation of Allen's complaint, the EEOC requested, *inter alia*, "[c]opies of all sexual harassment complaints, investigations and results of the investigations filed by employees since April 23, 1991." Defendant's Statement of Facts ¶ 85, filing 96. According to Dial, "[it] provided [the] EEOC with the requested information." *See id.* ¶ 86.[8] There is no reason for me to doubt that it was the EEOC's review of these documents, as well as other evidence, which led it to find "reasonable cause" to believe that Dial had engaged in class-wide discrimination by subjecting women to sexual harassment and by failing to take "prompt, effective action" in response to sexual harassment complaints. Letter of Determination, Banas Decl. at Ex 1 (filing 98, tab Z). Furthermore, this reasonable cause determination is not subject to judicial review. *See Walner*, 91 F.3d at 968 n. 3 ("This determination of reasonable cause is only an administrative prerequisite to a court action and has no legally binding significance in subsequent litigation." (citation omitted)); *EEOC v. St.*

*Anne's Hosp.*, 664 F.2d 128, 131 (7th Cir. 1981) (rejecting defendant's claim that the EEOC failed to investigate adequately a particular claim and noting that "[a] reasonable cause determination is not to adjudicate a claim but to notify an employer of the Commission's findings"); *EEOC v. Chicago Miniature Lamp Works*, 526 F.Supp. 974, 975 (N.D.Ill.1981) (rejecting defendant's request "to look behind [the] EEOC's express finding of broad-scale discrimination to decide whether [the] EEOC had any reasonable basis for making that finding," and noting that "Title VII's statutory scheme clearly indicates that no such procedure was intended by Congress"); *Keco Indus., Inc.*, 748 F.2d at 1100 (concluding that the district court erred in "inquir[ing] into the sufficiency of the Commission's investigation" (citing *St. Anne's Hosp.*, 664 F.2d at 128; *General Elec. Co.*, 532 F.2d at 359; *Chicago Miniature Lamp Works*, 526 F.Supp. at 974)); *General Elec. Co.*, 532 F.2d at 370 ("[The EEOC's] proceedings are not binding on the employer and they are not reviewable."). Thus, despite Dial's assertions to the contrary, I have no grounds for concluding that the EEOC's class-based action did not, in fact, "gr[o]w out of its investigation of Allen's charge." *See* Defendant's Reply at 4, filing 190.

▄ Next, Dial argues that because it was not informed of either the identity of the other claimants or the facts supporting their claims at any stage of the administrative process, it was denied the opportunity to conciliate these claims. *See* Defendant's Memorandum at 9, filing 94; Defendant's Reply at 5, filing 190. In response, the EEOC contends that Dial did, indeed, have an opportunity to conciliate all of the

---

98, tab Z). Thus, the *Walner* decision does little to advance Dial's cause.

**8.** The EEOC disputes this assertion, claiming that Dial did not produce complete responses

to its investigation requests. This dispute, however, is not relevant to the present discussion.

claims, and that "[i]t was Dial's refusal to even offer any reasonable relief for the charging party, much less the other members of the class, that impeded the conciliation process." Plaintiff's Memorandum at 43, filing 174. After reviewing the material submitted by both parties, I am persuaded that the EEOC satisfied its statutory obligation to conciliate.

■■■ The EEOC is charged with making a "good faith" effort to conciliate before filing suit. *See EEOC v. First Midwest Bank, N.A.,* 14 F.Supp.2d 1028, 1031 (N.D.Ill.1998) (citing *Keco Indus., Inc.,* 748 F.2d at 1102; *EEOC v. Zia Co.,* 582 F.2d 527, 533 (10th Cir.1978)). Conciliation, however, is " 'a flexible and responsive process which necessarily differs from case to case.' " *Id.* (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1169 (10th Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)). Thus, " '[t]he EEOC may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction . . . so long as it makes a sincere and reasonable effort to negotiate by providing an "adequate opportunity to respond to all charges and negotiate possible settlements." ' " *Id.* (quoting *Prudential,* 763 F.2d at 1169; *Marshall v. Hartford Fire. Ins. Co.,* 78 F.R.D. 97, 107 (D.Conn.1978)). The judiciary's role in reviewing the conciliation process is limited, as "the form and substance of the EEOC's conciliation proposals" are within the agency's discretion and, therefore, immune from judicial second-guessing. *See id.* (citing *Keco Indus., Inc.,* 748 F.2d at 1102; *EEOC v. Acorn Niles Corp.,* No. 93 C 5981, 1995 WL 519976, at *6 (N.D.Ill. Aug.30, 1995)).

Based on the evidence presented, it appears to me that the EEOC has satisfied its statutory duty to make "a sincere and reasonable effort to negotiate." *See id.* (quoting *Prudential,* 763 F.2d at 1169). The record shows that on March 16, 1998, EEOC investigator Norma Hill contacted Dial's in-house counsel, Margaret Banas, and advised Banas that (1) the EEOC was planning to issue its finding of reasonable cause that day, and (2) the EEOC was seeking relief on behalf of Allen and a class of females. *See* Defendant's Statement of Facts ¶ 87, filing 96; Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts [hereinafter Plaintiff's Response to Defendant's Statement of Facts] ¶ 87, filing 175. During this conversation, Banas apparently requested that Hill identify the class members. *See* Defendant's Statement of Facts ¶ 87, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶ 87, filing 175. According to Dial, Hill responded that she did not know who the class members were, and that their identities would have to be determined during discovery. *See* Defendant's Statement of Facts ¶ 87, filing 96. The EEOC, however, denies that Hill responded in this fashion. In her declaration, Hill states the following:

> I told [Banas] that [the class members] were yet to be identified. I told her the class would include those mentioned in the investigation but might also include other women. . . . I did not tell her that the identities of the other class members would have to be determined in discovery.

Declaration of Norma Hill ¶ 9 (filing 176, tab 117).[9]

---

9. According to Dial, "Hill's declaration testimony is contrary to her notes of her March 16, 1998[,] conversation with Banas . . ., which show that Hill told Banas nothing about the identity of particular class members other than Allen." *See* Defendant's Reply to the Additional Facts Alleged in Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue ¶ 87, filing 192 (citing Memo to File—Allen v. Dial Corp, McGlothlen

The EEOC's Letter of Determination, issued on March 16, 1998, invited Dial to engage in conciliation efforts by submitting proposed terms. *See* Letter of Determination at 2, Banas Decl. at Ex. 1 (filing 98, tab Z). Dial accepted the invitation and, by letter dated March 26, 1998, proposed to "conduct sexual harassment training of all supervisory personnel as well as distribute and review the Company's existing sexual harassment policy with all employees, both within an agreed upon time period." Letter from M. Margaret Banas, Senior Attorney, to Daniel McGuire, EEOC (March 26, 1998), Hill Decl. at Ex. E (filing 176, tab 117). Dial also proposed to "continue [its] practice of posting the sexual harassment policy on Company bulletin boards." *Id.* After discussing this offer with Banas, Hill advised her that the agency was seeking $300,000 on Beverly Allen's behalf. Defendant's Statement of Facts ¶ 89, filing 96; Declaration of Norma Hill ¶ 12 (filing 176, tab 117). Hill also indicated that "[the] EEOC would want a notice posted and changes made in Dial's sexual harassment policy." Plaintiff's Response to Defendant's Statement of Facts ¶ 89, filing 175 (citing Declaration of Norma Hill ¶ 12 (filing 176, tab 117)); *see also* Defendant's Reply to the Additional Facts Alleged in Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue [hereinafter Defendant's Reply to Plaintiff's Response] ¶ 89, filing 192 (admitting, for purposes of summary judgment, that Hill proposed such changes). The parties did not, however, discuss the matter of monetary compensation for class members other than Allen.[10]

Decl. at Ex. A (filing 98, tab DD)). Dial contends that these notes are "undisputedly admissible" under Federal Rule of Evidence 803(8) as a public record, and, "[b]ecause [these] contemporaneous notes have the effect of sworn testimony, [Hill's] subsequent declaration contradicting those notes is inadmissible and should be disregarded." *Id.* A review of these notes, however, does not reveal a contradiction. *See* Memo to File—Allen v. Dial Corp, McGlothlen Decl. at Ex. A (filing 98, tab DD). The notes simply do not mention whether anything was discussed regarding the identity the other class members. *See id.*

10. In its statement of facts, Dial contends that "no one at the agency specified what relief they [sic] were seeking of behalf of the unidentified class members." Defendant's Statement of Facts ¶ 89, filing 96 (citing Declaration of M. Margaret Banas ¶ 5 (filing 98, tab Z)). In response, the EEOC asserts, *inter alia*, that it "made a monetary demand for Beverly Allen before proceeding to make a monetary demand with respect to class members other than Ms. Allen in an attempt to reach an agreement on that issue first." Plaintiff's Response to Defendant's Statement of Facts ¶ 89, filing 175 (citing Declaration of Norma Hill ¶ 12 (filing 176, tab 117) ("I did not specify a monetary demand for the other class members, since Respondent had not asked for one. I intended to see, first, if we could come to some agreement over the monetary relief for [Allen], before attempting to come to an agreement with respect to the other class members.")). One circuit has recognized that "[t]o withdraw from discussions while the other party is offering to negotiate the broad issues, merely because an impasse has occurred as to the charging party, smacks more of coercion than of conciliation." *EEOC v. Pet, Inc.*, 612 F.2d 1001, 1002 (5th Cir.1980). Thus, the court concluded, "[s]uch an all-or-nothing approach on the part of a commission, one of whose most essential functions is to attempt conciliation, will not do." *Id.* (citation omitted). Dial, however, does not mention this decision in its brief. Furthermore, in its reply to the additional facts alleged in the EEOC's response, Dial asserts that "[the] EEOC's statement regarding why Hill made a monetary demand for Allen before proceeding to make a monetary demand for other class members is immaterial because there is no evidence that Hill communicated her reasons or intent to Banas during the conciliation process." Defendant's Reply to Plaintiff's Response ¶ 89, filing 192. I therefore see no reason to focus on the issue of whether the EEOC acted inappropriately in seeking to first negotiate the individual claim of the charging party.

By letter dated May 26, 1998, Dial responded to the EEOC's counterproposal by offering to pay Allen $5,000. Letter from M. Margaret Banas, Senior Attorney, to Norma Hill, EEOC (May 26, 1998), Hill Decl. at Ex. F (filing 176, tab 117). Dial also agreed to train supervisory personnel, distribute its sexual harassment policy to all employees, and continue posting the policy. *Id.* Allen rejected the $5,000 offer, and Hill then notified Banas that conciliation efforts had failed. Declaration of Norma Hill ¶ 14 (filing 176, tab 117).

After examining the facts outlined above, I am persuaded that the EEOC did, indeed, attempt to conciliate with Dial pursuant to its statutory obligation. Its conciliation efforts were permissibly premised upon individual as well as class-based claims. Both parties had the opportunity to put their respective proposals on the table before the EEOC determined that conciliation would be futile. Once Dial rejected the EEOC's counterproposal, the "EEOC had no further duty at that point to conciliate any further." *See General Motors Corp.*, 826 F.Supp. at 1127; *see EEOC v. Rymer Foods, Inc.*, No. 88 C 10680, 1989 WL 88243, at *1 (N.D.Ill. July 31, 1989) ("The EEOC is under no obligation to attempt further conciliation once the employer rejects the EEOC's offer." (citing *Keco Indus., Inc.*, 748 F.2d at 1101–1102; *EEOC v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 262 (N.D.Ill.1980))). Despite Dial's assertion to the contrary, I simply am not convinced that the EEOC failure to identify every class member during the conciliation process rendered to its efforts to conciliate inadequate. I recognize that there is a disputed question of fact as to whether Hill advised Banas that the class would include those women mentioned during the course of its investigation. Nevertheless, even if Hill did not offer such advice, Dial could reasonably surmise that the class would include, at a minimum, those women referred to in the materials it had supplied to the EEOC in response to the agency's requests for information. Thus, this is not a case where the employer was forced to make a conciliation proposal "in an evidentiary vacuum." *See First Midwest Bank*, 14 F.Supp.2d at 1032 (concluding that the EEOC did not engage in a good faith effort to conciliate where, *inter alia*, the EEOC expected the employer to submit a proposal without *any* information regarding the class of women against whom the employer allegedly discriminated). I therefore find that the EEOC satisfied its statutory duty to conciliate its claims before filing suit.[11]

---

11. Dial frames it's conciliation argument as a ground for summary judgment. Several courts, however, have rejected dismissal as a sanction where the EEOC has at least attempted to conciliate. These courts have determined that the more appropriate remedy in such circumstances is to stay the proceedings for a period of time to enable the conciliation process to continue. *See, e.g., Rymer Foods, Inc.*, 1989 WL 88243, at *1 ("If the court finds the EEOC failed to negotiate in good faith, the appropriate remedy is to stay the proceedings." (citations omitted)); *Sears, Roebuck & Co.*, 504 F.Supp. at 262 ("The sufficiency of the conciliation effort presents a question of whether the court should stay the proceeding for further conciliation, not whether it has jurisdiction over the cause." (citation omitted)); *Prudential*, 763 F.2d at 1169 ("Accordingly, we have refused to dismiss cases where the EEOC failed to exhaust fully its duty to conciliate because to do so would severely hamper enforcement of the ADEA and would be 'incompatible with the humanitarian nature of the Act.' ... We have concluded instead that when the EEOC initially makes a sufficient albeit limited effort to conciliate, the minimal jurisdictional requirement of the Act is satisfied and the action is therefore properly before the court.... Once this initial effort is made, 'if the district court finds that further conciliation efforts are required the proper course is to stay proceedings until such informal conciliation can be concluded.' " (citations omitted)); *Pet, Inc.*, 612 F.2d at 1002–03 (concluding that dismissal was not appropriate where "conciliation has at least been attempted in good faith, though prematurely aborted" (citation omit-

In summary, I find that the EEOC has fulfilled Title VII's requirements with respect to notice and conciliation. In accordance with 42 U.S.C. § 2000e–5(b), the EEOC notified Dial of Allen's sexual harassment charge and began an investigation. The EEOC permissibly broadened the scope of its investigation when it discovered evidence suggesting that Dial had engaged in class-wide discrimination by subjecting women to sexual harassment and by failing to take "prompt, effective action" in response to sexual harassment complaints. Letter of Determination, Banas Decl. at Ex. 1 (filing 98, tab Z); *see Walner*, 91 F.3d at 968; *United Parcel Serv.*, 94 F.3d at 318; *General Motors Corp.*, 826 F.Supp. at 1127. The EEOC then issued a Letter of Determination, advising Dial that it intended to seek relief on behalf of Allen as well as other class members, and thereafter engaged in good faith, albeit unsuccessful, efforts to conciliate the claims. Thus, for the reasons outlined above, Dial's motion for summary judgment is denied, to the extent it is based on the EEOC's alleged failure to satisfy its statutory obligations with respect to notice and conciliation.

■ Next, Dial argues that the EEOC's case lacks the requisite timely underlying charge. Dial asserts that since Beverly Allen filed her charge on February 5, 1996, there must have been an actionable violation within 300 days of that date, *i.e.*, April 5, 1995, for the charge to be timely. *See* Defendant's Memorandum at 11, filing 94. According to Dial, "the only acts about which Allen complains which could give rise to a Title VII claim undisputedly occurred before *February 1995*," and the

EEOC is therefore forced to rely on a continuing violation theory "in an attempt to resurrect Allen's time-barred allegations." *Id.* at 11–12 (emphasis in original). However, Dial continues, this theory fails because (1) as noted above, there was no actionable occurrence within the 300–day period, and (2) Allen believed she had been the victim of harassment well before April of 1995, and, therefore, could not "reach back and base her suit also on conduct that occurred outside the [300–day limitations period]; for she had no excuse for waiting that long." *Id.* at 12; *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir.1996) (citations omitted); *see also Garrison v. Burke*, 165 F.3d 565, 569–70 (7th Cir.1999) ("Acts that fall outside the statute of limitations may be joined to an act within the statute only if a reasonable person in the position of the plaintiff would not have known, at the time the untimely acts occurred, that she had a claim; rather, she could *only tell by hindsight* that the untimely acts represented the early stages of harassment." (emphasis in original) (citing *Galloway*, 78 F.3d at 1166)). Thus, Dial concludes, Allen's charge was untimely and cannot form the basis for the EEOC's pattern-or-practice suit.

I do not find Dial's argument persuasive. As an initial matter, I agree that when the EEOC chooses to proceed under § 2000e–5 to address an employer's alleged discrimination against a class of employees, Title VII requires "that [the agency] have found reasonable cause to believe a valid charge filed in a timely manner." *See Walner*, 91 F.3d at 969; *see also id.* at 968 ("The enforcement provisions of § 706 of Title

ted)); *EEOC v. Hugin Sweda, Inc.*, 750 F.Supp. 165, 168 (D.N.J.1990) (" '[S]ummary judgment is far too harsh a sanction to impose on the EEOC even if the court should ultimately find that conciliation efforts were prematurely aborted.' ... Thus, rather than

grant summary judgment in favor of the defendant, the Court will stay this action for a period of 45 days to provide the parties with the opportunity to engage in conciliation." (citation omitted)).

VII, which allow [the] EEOC to initiate civil actions, are therefore predicated upon a timely charge upon which [the] EEOC has made a determination of reasonable cause."). However, the Seventh Circuit has suggested that § 2000e–5(e)'s 300–day requirement will not bar individual claims when the EEOC is proceeding, as it is in this case, on a pattern-or-practice theory. *See id.* at 969; *see also* Complaint ¶¶ 1, 7, filing 1 (alleging a pattern or practice of discrimination); *infra* Parts III.C.4 & III.D.2.b (discussing the relevant limitations period in pattern-or-practice litigation).[12] Furthermore, as discussed above, the Seventh Circuit has also recognized that "[t]he timely filing of an EEOC charge is *not* a *jurisdictional* prerequisite to filing a federal lawsuit . . . ." *Hentosh,* 167 F.3d at 1174 (emphasis supplied); *see supra* Part III.B. I therefore agree with the EEOC that even if Dial's timeliness assertions are true, such assertions "would not create a jurisdictional barrier to an individual suit by [Allen] or by [the] EEOC." Plaintiff's Memorandum at 40, filing 174; *see Walner,* 91 F.3d at 971–72. Thus, Dial's motion for summary judgment will be denied, to the extent it is based on a claim that the EEOC's pattern-or-practice case lacks the requisite timely underlying charge.

### 2. *Merits of Allen's Claim*

Dial contends that even if Allen's charge is timely, "[the] EEOC cannot base a pattern and practice case on Allen's allegations because those allegations lack sufficient merit to proceed to trial under Title VII." Defendant's Memorandum at 13, filing 94. According to Dial, the conduct about which Allen complains, although inappropriate, was not so "extreme and objectively humiliating as to rise to the level of actionable harassment under a long line of Seventh Circuit authority." *Id.* at 16. In addition, Dial argues that even if the conduct alleged by Allen rose to the level of actionable harassment, the EEOC cannot establish a basis for holding Dial liable for the conduct. *See id.* at 17–18. Thus, Dial concludes, because Allen's charge lacks merit, it cannot form the basis for the EEOC's pattern-or-practice claim.

In response, the EEOC characterizes Dial's challenge as an attempt to litigate the agency's finding of reasonable cause. Plaintiff's Memorandum at 40, filing 174. According to the EEOC, "[t]he argument that Allen's individual claim fails as a matter of law is, of course, irrelevant to the use of her charge as the basis for the EEOC's lawsuit." *Id.* at 40 n. 19. I agree with the EEOC.

As discussed above, the EEOC has satisfied Title VII's administrative prerequisites to filing suit in federal court. *See supra* Part III.C.1. It notified Dial of the charge filed by Allen, investigated the charge, issued a Letter of Determination finding reasonable cause to believe that Dial had discriminated against women, including Allen, as a class, and engaged in good faith efforts to conciliate the claims against Dial. *See* 42 U.S.C. § 2000e–5(b); *supra* Part III.C.1. Thus, in raising the

---

12. According to the Seventh Circuit in *Walner:*

> [The] EEOC's choice to proceed under § 2000e–5 to address Walner's alleged discrimination against a class of employees required that it have found reasonable cause to believe a valid charge *filed in a timely manner.* [The] EEOC chose not to proceed under § 2000e–5 upon a Commissioner's charge.... *Nor did it choose to prosecute under a "pattern or practice" theo-*

> *ry pursuant to § 2000e–6.* Its tactical decision required that it have a valid charge supported by a finding of reasonable cause upon which to base its complaint.

*Walner,* 91 F.3d at 969 (emphasis supplied) (citations omitted); *see also Mitsubishi,* 990 F.Supp. at 1086 (recognizing *Walner's* suggestion that "a § 707 pattern or practice case does not require a valid charge filed in a 'timely' manner").

merits of Allen's allegations as grounds for challenging the basis for the EEOC's pattern-or-practice case, it seems that Dial is again inviting me to revisit the EEOC's finding of reasonable cause. As stated above, however, such findings simply are not subject to judicial review. *See supra* Part III.C.1; *Walner,* 91 F.3d at 968 n. 3; *St. Anne's Hosp.,* 664 F.2d at 131; *Chicago Miniature Lamp Works,* 526 F.Supp. at 975–76; *Keco Indus., Inc.,* 748 F.2d at 1100; *General Elec. Co.,* 532 F.2d at 370. I therefore find that Dial's motion for summary judgment is denied, to the extent it is based on a claim that because Allen's allegations lack merit as a matter of law, the EEOC cannot base its pattern-or-practice claim on her charge.

### 3. Viability of Pattern–or–Practice Theory in Sexual Harassment Cases

■ Dial also asserts that Title VII's pattern-or-practice theory of liability is not viable in sexual harassment cases because sexual harassment claims, by nature, are not suited to class treatment. *See* Defendant's Memorandum at 19–20, filing 94. According to Dial, "[n]o type of case in the discrimination area is as inherently individualized as a sexual harassment case." *Id.* at 20. Thus, Dial asserts, since "an employer's liability turns on the particularized experience of the individual claimant," sexual harassment cases simply "do not fit within the pattern and practice rubric." *Id.* Instead, Dial concludes, the pattern-or-practice theory should be reserved for those types of cases that "Congress intended when it authorized the agency to bring [such] actions, *e.g.,* where a hiring or pay policy of general application adversely impacts an identifiable class of employees and damages are easy to ascertain." *Id.* at 19–20; *see also id.* at 20 (alleging that "[the] EEOC cannot point to a specific policy or practice responsible for the alleged sexual harassment"); *id.* at 21 (arguing that "because Dial has no identifiable

policy in favor of harassment which has adversely affected a class of readily identifiable victims, this case cannot proceed on a pattern and practice theory" (citation omitted)); *id.* at 24 (contending that "the ultimate flaw in [the] EEOC's theory is that it does not truly challenge a policy and practice of general application, but rather attempts to aggregate a large number of highly individualized claims which are not susceptible to class-type treatment" (citation omitted)); Defendant's Reply at 11, filing 190 ("Claims can be effectively adjudicated under [the *Teamsters* ] model only where a plaintiff challenges an employer's broad-based policy, such as a hiring or pay policy.").

On a related note, Dial also argues that allowing this case to proceed as a class action would thwart the interests of efficiency and judicial economy. While recognizing that Rule 23 does not govern the EEOC's pattern-or-practice claim, Dial maintains that "Congress had in mind Rule 23 principles when it authorized the agency to bring pattern and practice cases, and those principles provide guidance to trial court judges in exercising their discretion to determine whether a pattern and practice case should be allowed." Defendant's Memorandum at 19, filing 94 (citing *General Tel. Co.,* 446 U.S. at 329 n. 13, 100 S.Ct. 1698; *EEOC v. D.H. Holmes Co., Ltd.,* 556 F.2d 787, 795 n. 11 (5th Cir. 1977)); *see General Tele. Co.,* 446 U.S. at 324, 100 S.Ct. 1698 ("[T]he EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit."); *Mitsubishi,* 990 F.Supp. at 1069–70 n. 4 (recognizing that "Federal Rule of Civil Procedure 23's concerns, such as the adequacy of the class representative and/or whether indi-

vidual issues and defenses predominate, are simply not considered in a pattern or practice action" (citation omitted)).[13] Noting that one of the purposes of the class action device is to promote judicial economy, Dial contends that pattern-or-practice claims, like class actions, are appropriate "only where common questions predominate over individualized issues, *i.e.*, where a policy or practice of general application applies to readily identifiable victims." *Id.* at 21. Here, Dial reasons, where the claimants allege "different conduct, by different alleged perpetrators, which took place over the course of more than twelve years on different shifts," individualized issues certainly predominate. *See id.* at 21–22. Thus, Dial concludes, "[g]iven the highly individualized nature of the putative class members' claims, it would be impossible for [the] EEOC to establish liability and damages through common proof at trial." *Id.* at 22.

It appears to me that Dial has misinterpreted the nature of pattern-or-practice litigation. As the EEOC correctly notes in its brief, several courts have recognized the ability of plaintiffs, including the EEOC, to proceed on a pattern-or-practice theory in litigating claims of systemic employment discrimination, including sexual harassment. *See, e.g., Mitsubishi,* 990 F.Supp. at 1070–71; *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 875–76 (D.Minn.1993); *Warnell v. Ford Motor Co.,* 189 F.R.D. 383, 386–88 (N.D.Ill.1999); *Bremiller v. Cleveland Psychiatric Inst.,* 195 F.R.D. 1, 25–26 (N.D.Ohio 2000); *see also U.S. Equal Emply. Com'n v. Foster Wheeler Constructors, Inc.,* No. 98 C 1601, 1999 WL 528200, at *1–2 (N.D.Ill. July 13, 1999) (allowing the EEOC to pursue its

race discrimination/hostile work environment claim on a pattern-and-practice theory). These courts have addressed, and rejected, arguments similar to those now raised by Dial. *See, e.g., Warnell,* 189 F.R.D. at 386–87 ("Ford argues in effect that no sexual harassment case can be maintained as a class action. This is a bold and striking claim, but one quite without merit."); *Foster Wheeler,* 1999 WL 528200, at *2 ("Defendants' argument that hostile work environment claims are inappropriate for class actions is similarly flawed."); *Mitsubishi,* 990 F.Supp. at 1070 ("This Court does not need to make a great leap of faith to state the obvious: Title VII authorizes a pattern or practice action for sexual harassment."). As these courts explain, pattern-or-practice liability does not turn upon "the particularized experience of the individual claimant." *See* Defendant's Memorandum at 20, filing 94. Instead, "the landscape of the total work environment, rather than the subjective experiences of each individual claimant, is the focus for establishing a pattern or practice of unwelcome sexual harassment which is severe and pervasive." *Mitsubishi,* 990 F.Supp. at 1074 (notes omitted); *see Warnell,* 189 F.R.D. at 387 (quoting *Mitsubishi,* 990 F.Supp. at 1074); *Bremiller,* 195 F.R.D. at 25 (same); *Foster Wheeler,* 1999 WL 528200, at *2 ("To force the EEOC to prove each individual claim would be contrary to the way that pattern and practice claims operate." (citation omitted)). Thus, it is "[t]he existence of a company's policy of tolerating sexual harassment [that] is the basis for pattern or practice liability." *Mitsubishi,* 990 F.Supp. at 1074; *see also id.* at 1077 ("The

---

**13.** Although pattern-or-practice claims are not subject to Rule 23's requirements, I agree with the *Mitsubishi* court that "the use of the term 'class' for the group of individuals on whose behalf the EEOC is bringing this action is, for lack of a better term, an acceptable nomenclature for the group." *See Mitsubishi,* 990 F.Supp. at 1076 n. 10; *see also* Defendant's Memorandum at 19, filing 94 (suggesting that the EEOC's use of the term "class" constitutes an admission that Rule 23's procedures should guide this litigation).

purpose and effect of a successful pattern or practice case is to impose liability upon a private employer, not simply for individual wrongs, but for discriminatory policies created and maintained by an employer that result in a system-wide pattern or practice of disparate treatment against individuals who fall within a protected class."); *Warnell*, 189 F.R.D. at 387 (quoting *Mitsubishi*, 990 F.Supp. at 1074); *Bremiller*, 195 F.R.D. at 25 (same). I see no reason to disagree with these decisions and therefore reject Dial's contentions that Title VII's pattern-or-practice theory of liability is not viable in sexual harassment cases generally or in this case specifically.

Borrowing again from Rule 23's class action requirements, Dial also contends that the EEOC's case should be dismissed on "manageability" grounds. *See* Defendant's Memorandum at 23, filing 94 ("In addition to promoting judicial economy, a proposed action must be manageable in order to proceed on a class basis."); *see also* FED. R. CIV. P. 23(b)(3)(D) (providing that "the difficulties likely to be encountered in the management of a class action" is a relevant factor in determining whether common questions of law or fact predominate). In support of its claim, Dial asserts that "[the] EEOC is proposing litigation of immense proportions," as "[t]he Court and a jury will have to sit through as many as 101 trials to see which, if any, meet the legal requirements for actionable sexual harassment." Defendant's Memorandum at 23, filing 94. According to Dial, "no jury can be expected to perform such a Herculean task, and no Court should be asked to do so either." *Id.* at 23–24. I disagree.

As discussed below, this case will proceed according to the *Mitsubishi* model. *See infra* Part III.C.4. Thus, in the first phase of the proceedings, the EEOC will bear the burden of demonstrating a pattern or practice of sexual harassment. *See*

*Mitsubishi*, 990 F.Supp. at 1070–77. The second phase will then focus on particular individuals' entitlement to relief. *Id.* at 1077–1082. While recognizing that individual phase of the proceedings may take some time to complete, this action is not, by any means, unmanageable. *See, e.g., Mitsubishi*, 990 F.Supp. at 1088 (indicating that 289 plaintiffs were involved); *see also Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 342 (N.D.Ill.1997) ("It is clear, however, that large class size alone is not an impediment to class certification." (citation omitted)). To the contrary, it appears that the *Mitsubishi* model represents a reasonable and appropriate method of managing this case. In short, I am not willing to bar the EEOC's pattern-or-practice action simply because a large number of women may have been affected by Dial's alleged policy of tolerating harassment. Thus, to the extent Dial argues for dismissal on manageability grounds, its motion for summary judgment will be denied.

### 4. *EEOC v. Mitsubishi Motor Mfg.*

According to Dial, "[t]he only prior decision which squarely addresses the issue of [the] EEOC's pattern and practice authority in a sexual harassment context is [*EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F.Supp. 1059 (C.D.Ill. 1998) ]." Defendant's Memorandum at 24, filing 94. Dial, however, attempts to distinguish *Mitsubishi*, noting the following: (1) *Mitsubishi* arose from a commissioner's charge, rather than an individual's charge, as in this case; (2) *Mitsubishi* arose before the United States Supreme Court articulated a new employer defense in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); and (3) the *Mitsubishi* decision was "issued at a different procedural stage than that presented here." *Id.*

Thus, Dial concludes, "the *Mitsubishi* rationale for authorizing a pattern and practice sexual harassment suit is not justified in or applicable to this case." *Id.* at 27. I disagree.

First, although the *Mitsubishi* action was predicated on a commissioner's charge, I do not find this fact dispositive. As discussed above, an individual charge may also form the basis for a pattern-or-practice action, so long as that action arose from an investigation "reasonably related in scope to the allegations of the underlying charge . . . ." *United Parcel Serv.*, 94 F.3d at 318 (citing *Cheek*, 31 F.3d at 500); *see supra* Part III.C.1. I therefore am not persuaded that the *Mitsubishi* model should be abandoned simply because the EEOC's action is based on an individual's charge, rather than a commissioner's charge. *See* discussion *infra* Part III. D.2.b. Nor do I believe that the employer defense articulated in *Ellerth* and *Faragher* render the *Mitsubishi* model unworkable. As discussed below, these defenses can be incorporated into the *Mitsubishi* framework. *See, e.g., Warnell*, 189 F.R.D. at 388 (rejecting defendant employer's assertion that availability of affirmative defense barred class certification in sexual harassment pattern-or-practice case); *Bremiller*, 195 F.R.D. at 28–31 (incorporating the *Ellerth/Faragher* affirmative defense into the pattern-or-practice analysis). Thus, Dial's first two grounds for distinguishing *Mitsubishi* are without merit.

In attempting to distinguish *Mitsubishi* on factual grounds, Dial notes that "Mitsubishi did not argue, as Dial does here, that the depositions of the putative class mem-

bers demonstrate that the pattern and practice sexual harassment claim, as well as the individual claims, also fail on the merits." Defendant's Memorandum at 24 n. 18, filing 94; *see also* Defendant's Reply at 7, filing 190 ("[G]iven the more complete record in this case, *Mitsubishi* is distinguishable[.]"). The *Mitsubishi* court explained the EEOC's burden in a pattern-or-practice case as follows:

> [T]he EEOC will be permitted to establish a pattern or practice of sexual harassment by proving, by a preponderance of the evidence, that an objectively reasonable person would find the existence of: (1) a hostile environment of sexual harassment within the company (a hostile environment pattern or practice) or a situation where individuals within the workplace, as a whole, must accept a gender-hostile environment to enjoy the tangible benefits of their jobs (a *quid pro quo* pattern or practice); and (2) a company policy of tolerating (and therefore condoning and/or fostering) a workforce permeated with severe and pervasive sexual harassment.

*Mitsubishi*, 990 F.Supp. at 1073;[14] *see also id.* at 1069 (noting that "[t]he pattern or practice theory is that [the employer] created and maintained a sexually hostile and abusive work environment . . . because it tolerated . . . individual acts of sexual harassment by its employees by refusing to take notice of, investigate, and/or discipline the workers who sexually harassed other employees"); *Jenson*, 824 F.Supp. at 875 (explaining that a pattern or practice is present where " 'discrimina-

---

**14.** The United States Supreme Court has concluded that the categories *quid pro quo* and hostile work environment are no longer controlling on the issue of vicarious liability. *Ellerth*, 524 U.S. at 754, 118 S.Ct. 2257. Nevertheless, the Court also recognized that these categories may still be useful in Title VII litigation. *Id.* at 753, 118 S.Ct. 2257. Ac-

cording to the Court: "To the extent they illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general, the terms are relevant when there is a threshold question whether a plaintiff can prove discrimination in violation of Title VII." *Id.*

tion was the company's standard operating procedure—the regular rather than the unusual practice'" (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360–62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977))). According to Dial, the EEOC's evidence fails with respect to both of the elements outlined above. First, Dial argues, the EEOC simply cannot demonstrate that a hostile environment of sexual harassment existed at the Aurora facility, as most of the individual class members' allegations do not rise to the level of "actionable sexual harassment." [15] Thus, Dial asserts, "[b]ecause the class members' claims are not actionable individually, they cannot support [the] EEOC's pattern and practice theory in the aggregate." Defendant's Memorandum at 27, filing 94. Next, Dial points to the following mechanisms it has in place to combat sexual harassment, including (1) a written sexual harassment policy that includes multiple channels through which employees can report harassment; (2) an 800 "hotline" to its corporate offices through which Aurora employees can report harassment; (3) a practice of posting the policy on various bulletin boards throughout the plant, reviewing the policy with new employees as part of its new-hire orientation, and training both hourly and salaried employees in how to recognize, prevent, and report incidents of alleged harassment; and (4) a practice of investigating sexual harassment complaints and, where appropriate, taking corrective action reasonably calculated to end the harassment. Dial contends that the above evidence relating to its preventive and corrective action demonstrates that "no reasonable jury could conclude that Dial had in place a company-wide policy of condoning and fostering sexual harassment." *Id.* at 26. Thus, Dial concludes, the EEOC's pattern-or-practice claim fails as a matter of law. I disagree.

■ Before addressing the merits of the EEOC's pattern-or-practice claim, however, I will first address Dial's attempt to exclude all evidence relating to alleged incidents that occurred outside the 300-day time period defined by 42 U.S.C. § 2000e–5(e). According to Dial, many of the class members' allegations are immaterial and irrelevant, as they relate to conduct or events that occurred before April 5, 1995, *i.e.*, 300 days before Beverly Allen filed her EEOC charge. Such allegations, Dial asserts, are therefore time-barred and cannot support the EEOC's pattern-or-practice claim. I disagree. For reasons discussed more fully below, I have determined that the timeliness of a particular class member's claim will not depend upon the limitation found in § 2000e–5(e). *See infra* Part III.D.2.b. Instead, I will follow the *Mitsubishi* model and "let the evidence of a pattern or practice determine the relevant 'limits' for the lawsuit." *Mitsubishi*, 990 F.Supp. at 1087. Thus, in determining whether genuine issues remain regarding the existence of a hostile environment at the Aurora plant, I will not restrict my analysis to allegations relating to post-April 5, 1995, events.

■ Turning now to the merits of the EEOC's pattern-or-practice claim, I have reviewed the allegations specifically relied on by the EEOC in its opposition brief, and I am not prepared to find, as a matter of law, that such allegations fail to rise to

---

**15.** By "actionable sexual harassment," Dial means "conduct so severe or pervasive that it altered the conditions of .. employment and created an abusive working environment." *See* Defendant's Reply at 21, filing 190 (citing *Faragher*, 524 U.S. at 786, 118 S.Ct. 2275);

*see also Meritor*, 477 U.S. at 67, 106 S.Ct. 2399 ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" (citation omitted)).

the level of "actionable sexual harassment." *See supra* note 15; *see also* Defendant's Reply at 20, 21, filing 190 (arguing that the EEOC cannot establish a plant-wide problem of "actionable sexual harassment" at the Aurora plant because "the vast majority of [class members] experienced, at most, sporadic and mildly offensive sexual conduct, none of which is sufficient to establish an individual hostile environment claim"). To the contrary, "[t]aking [the EEOC's] version of the facts as true, it appears that the work environment at [Dial] was sexually charged in a way that was offensive and demeaning to women." *See Bremiller*, 195 F.R.D. at 26.[16] Several women testified that they were subjected to physically-invasive behavior by male employees. This alleged behavior ranged in severity from men touching women's breasts and buttocks to an incident where a male co-worker grabbed a class member by the crotch and jerked upwards. In addition, male employees allegedly exposed themselves to their female co-workers or touched their genitals while making suggestive or threatening remarks. Dozens of women also indicated that they were the targets of repeated comments and conduct of a sexual nature. Finally, many women testified as to open displays of sexually offensive materials in the workplace, including pornographic magazines, pornographic calendars, pictures of nude women, pictures of scantily-clad women, and sexual cartoons. *See Jenson*, 824 F.Supp. at 880 ("The posting of sexually-oriented materials in common areas may serve as evidence of a hostile environment." (citation omitted)).

In order to be actionable, however, incidents of harassment must also be unwelcome and "based upon sex." *See, e.g., Mitsubishi*, 990 F.Supp. at 1074, 1074 n. 5; *Jenson*, 824 F.Supp. at 883–84; *Bremiller*, 195 F.R.D. at 26–27. Generally, in the pattern-or-practice context, "a finding of unwelcomeness will be justified where the plaintiff class shows by a preponderance of the evidence that women, by their conduct indicated that the acts of sexual harassment were unsolicited and regarded as undesirable or offensive." *Jenson*, 824 F.Supp. at 883; *see also Mitsubishi*, 990 F.Supp. at 1074 n. 5 (agreeing with the district court in *Jenson* regarding its pattern-or-practice finding of unwelcomeness); *Bremiller*, 195 F.R.D. at 26 (same). Here, there is little, if any, evidence that "women invited acts of sexual harassment or found such acts to be acceptable." *Bremiller*, 195 F.R.D. at 26. Nor does there appear to be any evidence indicating that the alleged acts of harassment were solicited by class members. To the contrary, several women testified that they warned their male co-workers regarding the inappropriateness of certain behavior and, on several occasions, complained to supervisors about the alleged harassment. *See id.* Finally, with respect to the "based upon sex" requirement, the majority of the conduct complained of was "explicitly sexual in nature," raising the inference that the harassment was, indeed, based upon sex. *See Bremiller*, 195 F.R.D. at 27; *Jenson*, 824 F.Supp. at 884. Thus, for reasons outlined above, it appears that for the purposes of summary judgment, the EEOC has submitted sufficient evidence

**16.** In analyzing whether a hostile environment existed at the Aurora plant, I am not limited to considering only those incidents that were reported to management. *See, e.g., Bremiller*, 195 F.R.D. at 26 n. 9 ("It is important to note that the fact that incidents were or were not reported is irrelevant to a determination of whether or not a hostile environment existed." (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998))); *Distasio*, 157 F.3d at 62 ("[A]t the summary judgment stage the district court must assume that all of [the] plaintiff's allegations pertaining to the issue of a hostile work environment are true and give [unreported incidents] ... no less weight than reported incidents.").

demonstrating that class members were subjected to incidents of unwelcome sexual harassment at the Aurora plant.

In proving their pattern-or-practice claim, the EEOC must also demonstrate that a reasonable person would perceive the working environment as hostile. *See Harris,* 510 U.S. at 21–22, 114 S.Ct. 367 (providing that a sexually-objectionable environment, in order to be actionable under Title VII, must be both objectively and subjectively offensive, *i.e.,* one that a reasonable person would find hostile or abusive, and one that the individual, in fact, did perceive to be so); *Mitsubishi,* 990 F.Supp. at 1076 (explaining that "[a] pattern or practice case can be established without the subjective showings required by ... *Harris* "); *Jenson,* 824 F.Supp. at 885 (explaining that only the objective showing is necessary in class action pattern-or-practice litigation); *Bremiller,* 195 F.R.D. at 27, n. 11 (same); *see also supra* Part III.A (outlining the elements of a hostile environment sexual harassment claim). As discussed above, I must view the challenged conduct in light of " 'the record as a whole' " and " 'the totality of the circumstances' " in analyzing whether a reasonable person would find particular conduct " 'sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment.' " *Meritor,* 477 U.S. at 69, 67, 106 S.Ct. 2399 (citing 29 C.F.R. § 1604.11(b) (1985); *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). According to the United States Supreme Court, Title VII protects women from having to spend their work days running " 'a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living ....' " *Id.* at 67, 106 S.Ct. 2399 (quoting *Henson,* 682 F.2d at 902). Thus, as one court has explained:

> [W]here women are presented with constant and pervasive references to women, perhaps even themselves, as sexual objects and are subjected to acts in which their sexuality and sex role is elevated over their status as an employee,-that is, they are subject to pervasive sexual harassment on account of their sex-the reasonable woman would find the terms, conditions, and privileges of her employment affected by that sexual harassment.

*Jenson,* 824 F.Supp. at 886.

After considering the totality of the circumstances in this case, I find that genuine issues of material fact remain as to whether a reasonable person would deem the working environment at Dial's Aurora plant to be abusive or offensive in such a way as to alter the terms and conditions of employment. While some of the particularly disturbing physical attacks could be characterized as isolated, sporadic events, several class members testified that they experienced continuous comments, jokes, and stories of a sexual nature, as well as repeated instances of inappropriate touching or grabbing by male co-workers and supervisors. Generally, such comments and behavior were directed at class members, but some class members testified that they witnessed other women enduring similar hostility. Several class members also indicated that sexually-oriented materials were routinely displayed in various areas of the plant. In fact, one class member commented that prior to the early-to-mid 1990's, pornographic magazines were "just as common as newspapers" at the Aurora plant. *See* Plaintiff's Response to Defendant's Statement of Facts ¶ 575, filing 175. Taking the class members' allegations as a whole, "a reasonable jury could conclude that the sexualized environment that existed at [the plant] made it clear to women that they were perceived primarily as sexual objects." *See Bremiller,* 195 F.R.D. at 28. In short, there is sufficient evidence for a

jury to conclude that "the reasonable [person] would find the terms, conditions, and privileges of her employment affected" by such an environment. *See Jenson,* 824 F.Supp. at 886. I therefore find that genuine issues remain as to the existence of "a plant-wide atmosphere of conduct so severe or pervasive that it altered the conditions of . . . employment [at Aurora] and created an abusive working environment." *See* Defendant's Reply at 21, filing 190 (citing *Faragher,* 524 U.S. at 786, 118 S.Ct. 2275).

As noted above, the EEOC must also demonstrate that Dial had a company policy of tolerating sexual harassment. *See Mitsubishi,* 990 F.Supp. at 1073. According to the *Mitsubishi* court, "[t]he company's pattern or practice of tolerating [sexual] harassment . . . will require an additional showing of the company's notice and negligence." *Id.* at 1074. Since the *Mitsubishi* decision was issued, however, the United States Supreme Court has clarified that the standard for imposing liability differs when the conduct complained of was committed by a supervisor. *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275. Thus, as discussed above, Dial's liability for hostile environment sexual harassment will depend upon whether the alleged harassers were supervisors or merely co-employees. *See supra* Part III.A; *Parkins,* 163 F.3d at 1032 (recognizing that harassment " 'by co-workers differs from harassment by supervisors . . .' ") (citation omitted); *Bremiller,* 195 F.R.D. at 24.

With respect to sexual harassment by co-workers, the Seventh Circuit has recognized that an employer may be held liable where "it knew (or should have known) about the problem." *Timm v. Progressive Steel Treating, Inc.,* 137 F.3d 1008, 1009 (7th Cir.1998) (citing *Zimmerman,* 96 F.3d at 1018–19 (7th Cir.1996));

*see also Parkins,* 163 F.3d at 1035 ("[N]otice or knowledge of the harassment is a prerequisite for [employer] liability." (citation omitted)). Under this "knew or should have known" standard, an employer's actual knowledge is not required. *See Bremiller,* 195 F.R.D. at 28 ("[A] woman need not actually report an incident of sexual harassment, and an employer will not necessarily escape liability if she does not."). Thus, "notice may be presumed where the work environment is permeated with pervasive harassment." *Wilson v. Chrysler Corp.,* 172 F.3d 500, 509 (7th Cir.1999) (citing *Young v. Bayer Corp.,* 123 F.3d 672, 674 (7th Cir.1997); *Zimmerman,* 96 F.3d at 1018–19; *see Zimmerman,* 96 F.3d at 1018–19 ("The sheer pervasiveness of the harassment might support an inference that the employer must have known of it . . . ." (citations omitted))); *Mitsubishi,* 990 F.Supp. at 1074 ("When harassing behavior occurs frequently enough and is both common and continuous, a company can reasonably be said to be on 'notice' of a severe and pervasive problem of sexual harassment that constitutes a hostile environment." (citing *Young,* 123 F.3d at 674; *Jenson,* 824 F.Supp. at 886; *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1531 (M.D.Fla.1991)); *Jenson,* 824 F.Supp. at 886 ("An employer may be charged with knowledge when an employee or employees complain to management, or when the sexual harassment is pervasive, which gives rise to an inference of knowledge or constructive knowledge." (citations omitted)). An employer may also be found to have notice where the evidence shows that "many of a company's first-line supervisors had actual knowledge of the harassing behaviors (some of them may have participated in the harassment and others may have simply worked closely with those who did), . . . if these supervisors had a duty or reasonably could be believed to have such a duty, under the

company's sexual harassment policy, to 'pass on the information to someone within the company who has power to do something about it.'" *Mitsubishi,* 990 F.Supp. at 1075 (citing *Young,* 123 F.3d at 674).

 Once an employer knows or should know of pervasive sexual harassment by co-workers, it may be found negligent if it fails to take steps to address the problem on a company-wide basis. *See Mitsubishi,* 990 F.Supp. at 1075; *Bremiller,* 195 F.R.D. at 29. An employer must do more than merely investigate individual cases to defend successfully a pattern-or-practice action, as "situation-specific" responses simply will not suffice. *See Mitsubishi,* 990 F.Supp. at 1075. A systemic remedy is needed to address large-scale harassment problems. *See id.* Thus, to avoid a finding of negligence, employers must take steps "to determine whether individual incidents, which occur frequently and continuously, are 'indicative of a larger problem requiring a company wide response.'" *Id.* (quoting *Jenson,* 824 F.Supp. at 887). In addition, "[t]he 'effectiveness' of the remedial action ... is also relevant to the negligence analysis." *Id.* An employer may demonstrate effectiveness by showing that (1) it promptly responded to the problem, and its response was reasonably likely to prevent the misconduct from recurring, or (2) after it took action, the conduct complained of did not recur. *See id.* (quoting *Robinson,* 760 F.Supp. at 1531). Thus, the *Mitsubishi* summarized the EEOC's burden in demonstrating a company policy of tolerance as follows:

> [T]o find that an employer was "negligent" in a pattern or practice case, the EEOC must show that the employer had notice, failed to take steps to remedy the company-wide problem of harassment that it knew or should have known about, and, if it took such steps, failed to take effective steps. Such a showing

should be sufficient to establish a "policy" of tolerance by the company toward sexual harassment that would justify a finding of pattern or practice liability, so long as the other objective showings necessary to establish the existence of severe and pervasive harassment on a wide-scale basis are in place.

*Id.* at 1076.

After reviewing the evidence before me, I find that genuine issues of material fact remain as to whether Dial maintained a policy of tolerating co-worker harassment. First, with respect to notice, Dial suggests that because many of the class members failed to report the conduct about which they now complain, it had no way of knowing that a plant-wide problem existed. *See* Defendant's Reply at 27, filing 190. I disagree. As discussed above, several class members indicated that they were subjected to harassment by co-workers on a regular basis. Several class members also testified that offensive materials, including sexual cartoons, magazines, and calendars, were openly displayed. *See Jenson,* 824 F.Supp. at 880 ("The posting of sexually-oriented materials in common areas may serve as evidence of a hostile environment." (citation omitted)); *Wilson,* 172 F.3d at 509 (indicating that where the challenged conduct is "public and deliberately exhibitionist," the employer may be found to have "constructive notice of the harassment"). Viewing these facts in a light most favorable to the EEOC, a reasonable jury could certainly conclude that "[t]he sexual harassment complained of occurred too routinely 'to have escaped [Dial's knowledge] had its management been reasonably alert.'" *Bremiller,* 195 F.R.D. at 29 (quoting *Jenson,* 824 F.Supp. at 886); *see also Perry,* 126 F.3d at 1014–15 (recognizing that the failure to complain is relevant where the harassment cannot be discerned in any other way). Thus, there is sufficient evidence demonstrating

that co-worker harassment at the Aurora facility was "so pervasive that an inference of knowledge arises." *See Bremiller,* 195 F.R.D. at 29.

As noted above, the EEOC may also demonstrate notice by showing that Dial's "first-line supervisors had actual knowledge of the harassing behaviors ... if these supervisors had a duty ... under the company's sexual harassment policy, 'to pass on the information to someone within the company who has the power to do something about it.'" *See Mitsubishi,* 990 F.Supp. at 1075 (quoting *Young,* 123 F.3d at 674). According to Dial, its supervisors were advised to refer sexual harassment complaints to the Human Resources Department, which was responsible for documenting and filing the complaint. *See* Defendant's Statement of Facts ¶ 33, ¶ 44, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶ 33, ¶ 44, filing 175; Defendant's Reply to Plaintiff's Response ¶ 33, ¶ 44, filing 192; *see also* Deposition of William Jensen (Dec. 2, 1999) at 55:17–56:1 (filing 98, tab G) (indicating that supervisors were "not supposed to handle [such complaints] on their own"). There is evidence, however, indicating that supervisors did not always follow this referral procedure after receiving what could reasonably be construed as sexual harassment complaints. *See, e.g., Gentry v. Export Packaging Co.,* 238 F.3d 842, 849 (7th Cir.2001) ("[T]here is no legal mandate that an employee use the specific term 'sexual harassment' in order to inform his or her employer about a harasser in the workplace.... [The plaintiff's] comments about touching and hugging in the workplace should have raised suspicions."). In addition, several women testified that supervisors were present when harassment occurred. Based on such evidence, a reasonable fact finder could conclude that various supervisory personnel had actual knowledge of the harassing behaviors, yet failed to comply with Dial's policy of refer-

ring such information on to the Human Resources Department. *See Mitsubishi,* 990 F.Supp. at 1075; *see also Bremiller,* 195 F.R.D. at 30 (concluding that where supervisors failed to refer sexual harassment complaints to the company's EEO officer, as required by the employer's harassment policy, the employer's "complaint procedure was ineffective, [and it] could not legitimately rely on its employees to bring problems of sexual harassment to its attention for purposes of determining its knowledge"). Thus, for the reasons outlined above, I find that genuine issues of material fact remain as to whether Dial knew or should have known of a severe or pervasive problem of sexual harassment at the Aurora plant.

Next, Dial challenges the EEOC's ability to demonstrate negligence. According to Dial, the EEOC simply cannot show that Dial failed to "take steps to address the problem on a company-wide basis." *See Mitsubishi,* 990 F.Supp. at 1075. In support of its claim, Dial notes that it since before 1988, it has had in place a sexual harassment policy that includes a complaint procedure and multiple reporting channels. According to Dial, it has posted this policy in various locations throughout the Aurora plant and has reviewed the policy with managers as well as new employees. Dial also reports that (1) since at least 1991, it has had an 800 "hotline" to its corporate office through which Aurora employees can report harassment, and (2) it periodically trains both its salaried and hourly employees in how to recognize, prevent, and report incidents of alleged harassment. Finally, Dial also asserts that its responses to reported incidents of sexual harassment demonstrate that it does not tolerate such conduct in its workplace.

After reviewing the evidence, I find that genuine issues of material fact remain as

to the issue of Dial's negligence. First, Dial's reliance on the remedial action it took in response to individual complaints of co-worker harassment is misplaced. As discussed above, an employer, once it has actual or constructive knowledge of a company-wide problem, must do more that simply address individual instances of alleged misconduct in order to avoid pattern-or-practice liability. *See Mitsubishi,* 990 F.Supp. at 1075 ("The assertion that [the employer] may have investigated individual cases of sexual harassment will not be a defense to pattern or practice liability." (citing *Jenson,* 824 F.Supp. at 887)); *Bremiller,* 195 F.R.D. at 29; *Jenson,* 824 F.Supp. at 887. Here, there is little, if any, evidence indicating that Dial took steps "to determine whether individual incidents, which occur[red] frequently and continuously, [were] 'indicative of a larger problem requiring a company wide response.'" *See Mitsubishi,* 990 F.Supp. at 1075 (citing *Jenson,* 824 F.Supp. at 887); *see also Jenson,* 824 F.Supp. at 888 ("[An employer] cannot close its eyes when confronted with incidents of sexual harassment; it has the obligation to determine the scope of the problem and takes [sic] steps to alleviate it."). Although it appears that Dial has had a sexual harassment policy in place for several years and has trained its employees with respect to the policy, there is sufficient evidence for a fact finder to conclude that the harassment at Aurora was so severe or pervasive that additional steps were necessary to correct the problem. In short, genuine issues of material fact preclude me from finding that Dial's efforts to eradicate the alleged plant-wide discrimination were effective as a matter of law. *See Mitsubishi,* 990 F.Supp. at 1075. Thus, for the reasons outlined above, Dial's motion for summary judgment will be denied, to the extent it is based on a claim that Dial cannot be found liable for the alleged incidents of co-worker harassment.

■■■ As discussed above, an employer's liability for harassment by supervisors depends upon whether the "harassment culminate[d] in tangible employment action, such as discharge, demotion or undesirable reassignment." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275; *see supra* Part III.A. In such cases, the employer's liability is automatic. *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257 ("No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action …."); *Faragher,* 524 U.S. at 808, 118 S.Ct. 2275 (same). Where the alleged victim suffered no tangible employment consequences, however, "there is the possibility of an affirmative defense." *See Parkins,* 163 F.3d at 1032. In order to avail itself of this defense, an employer must demonstrate, by a preponderance of the evidence, that "(a) [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) … the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275.

In this case, several women testified that various supervisors and managers engaged in inappropriate behavior. *See, e.g.,* Defendant's Statement of Facts ¶¶ 170, 240, 288–289, 528, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶¶ 170, 240, 288–289, 528, filing 175; Plaintiff's Statement of Additional Facts ¶ 208, filing 183; Defendant's Response to Plaintiff's Statement of Additional Facts ¶ 208, filing 191; Plaintiff's Statement of Additional Facts ¶ 210, filing 183 (non-class member); Defendant's Response to Plaintiff's Statement of Additional Facts ¶ 210, filing 191 (non-class member). A review of the record reveals that the vast majority of

class members who allege harassment by supervisory personnel do not complain that such harassment culminated in a "tangible employment action." Thus, Dial's liability for misconduct on the part of supervisors appears to hinge on whether it can demonstrate both elements of the affirmative defense outlined above.

After reviewing the evidence, I find that genuine issues of material fact remain as to the issue of whether Dial is shielded from liability by the *Ellerth/Faragher* affirmative defense. As noted above, the first element of this defense requires the employer to demonstrate that it has exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. Dial apparently contends that its sexual harassment policy, its dissemination of that policy, its 800 hotline number, and its sexual harassment training demonstrate, as a matter of law, that it exercised reasonable care in preventing harassment at the Aurora plant. I disagree. I have already concluded that the EEOC has provided· sufficient evidence for a reasonable jury to find that Dial either knew or should have known of a plant-wide sexual harassment problem. I have also determined that there is little, if any, evidence demonstrating that Dial took steps "to determine whether individual incidents, which occur[red] frequently and continuously, [were] 'indicative of a larger problem requiring a company wide response.'" *See Mitsubishi,* 990 F.Supp. at 1075. In light of these conclusions, I am not persuaded that Dial's efforts to prevent harassment on a plant-wide basis were reasonable as a matter of law. *See Bremiller,* 195 F.R.D. at 31 (concluding that the employer was not immune from liability on

class claims of sexual harassment by supervisors where, *inter alia,* (1) the employer's sexual harassment policy was "clearly [in]effective in eradicating sexual harassment," (2) many supervisors failed to follow the referral procedures outlined in the policy, and (3) the employer merely made situation-specific attempts to remedy claims of harassment). In short, the EEOC has provided sufficient evidence demonstrating that "reasonable care" may have required more. Thus, Dial cannot show, as a matter of law, that it is shielded from liability by the *Ellerth/Faragher* affirmative defense.[17]

For the reasons outlined above, the EEOC has established that genuine issues of material fact remain as to whether Dial engaged in a pattern or practice of maintaining an environment sexually hostile to women. Dial's motion for summary judgment must therefore be denied, insofar as it is based on a claim that the EEOC's pattern-or-practice allegations are without merit.

### 5. *Bifurcation & the Seventh Amendment*

■ Citing to the *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the seminal case in establishing the framework for pattern-or-practice employment-discrimination actions, the *Mitsubishi* court explained that the EEOC's sexual harassment case would be tried in phases. *See Mitsubishi,* 990 F.Supp. at 1073–82. If the EEOC could successfully demonstrate in Phase I that the defendant engaged in a pattern or practice of tolerating sexual harassment, the court indicated that it would then turn to Phase II, in which the focus would shift to individual class members' entitlement to re-

---

**17.** Because I have determined that genuine issues of material fact remain as to whether Dial can satisfy the first element of the *El-* *lerth/Faragher* affirmative defense, there is no reason for me to address the second element. *See Bremiller,* 195 F.R.D. at 31.

lief. *See id.* at 1077–82. Dial contends that the *Mitsubishi* model of bifurcated proceedings runs afoul of the Seventh Amendment, which provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States . . . ." U.S. CONST. AMEND. VII; *see also In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1303 (7th Cir.1995), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1985) (explaining that the Seventh Amendment protects the "right to have juriable [sic] issues determined by the first jury impaneled to hear them (provided there are no errors warranting a new trial), and not reexamined by another finder of fact"). According to Dial, both it and the EEOC would offer much of same evidence in Phase II of the proceedings as they would in Phase I, and that, as a result, "issues and facts relating to Dial's liability would necessarily overlap between Phase I and Phase II, making it highly probable that different juries would reach different conclusions on the same issues," in violation of the Seventh Amendment. *See* Defendant's Memorandum at 28–29, filing 94. Thus, Dial concludes, the EEOC's pattern-or-practice case cannot proceed based on the *Mitsubishi* bifurcation model. I disagree.

The Seventh Circuit has recognized that district court judges "[have] considerable discretion to order the bifurcation of a trial." *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir.2000). When exercising this discretion, courts must avoid permitting separate juries to examine the same factual issues, but may permit separate juries to examine "overlapping evidence." *See Houseman v. United States Aviation Underwriters,* 171 F.3d 1117 (7th Cir.

1999) ("While both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." (citation omitted)); *see also* F.R. CIV. P. 42(b) (permitting the separate trial of any issue when separation would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy"); *Krocka,* 203 F.3d at 516 ("The district court may bifurcate a trial provided that this ruling 1) serves the interests of judicial economy or is done to prevent prejudice to a party; 2) does not unfairly prejudice the non-moving party; and 3) does not violate the Seventh Amendment." (citations omitted)); *Butler v. Home Depot, Inc.,* No. C–94–4335 SI, 1996 WL 421436, at *6 (N.D.Cal. Jan.25, 1996) ("As evidenced by the numerous cases across the country that have addressed this issue, the Seventh Amendment does not mandate that all phases of the litigation be heard by the same jury."). In the context of hostile environment pattern-or-practice claims, "a well-constructed bifurcation scheme, used in tandem with clear instructions to the juries[,] can delineate the roles of the . . . juries in order to avoid reexamination of any factual issues." *See Foster Wheeler,* 1999 WL 528200, at *3.[18] In Phase I, the jury will be instructed to find whether Dial engaged in a pattern or practice of maintaining an environment sexually hostile to women. *See id.* (citing *Mitsubishi,* 990 F.Supp. at 1073); *see also EEOC v. McDonnell Douglas Corp.,* 960 F.Supp. 203, 205 (E.D.Mo.1996) ("At the liability trial, the question is whether the employer engaged in a pattern or practice of discrimination. The only fact issue for the jury to decide is whether unlawful dis-

---

**18.** In *Foster Wheeler,* the court was apparently proceeding under the assumption that only two separate juries would be needed, one for Phase I and one for Phase II. *See Foster Wheeler,* 1999 WL 528200, at *3. The court's rationale would appear to apply with equal force here, where several juries will likely be needed for the individual relief phase of the proceedings.

crimination was the employer's regular procedure or policy." (citations omitted)). During this phase, the jury will consider (1) whether "an objectively reasonable person would find that, as a whole, the environment within the company [was] hostile," and (2) whether the employer can be held liable for the plant-wide problem of sexual harassment. *See Mitsubishi*, 990 F.Supp. at 1078 ("All that the EEOC will have established in Phase I by a finding of pattern or practice is that an objectively reasonable person would find that, as a whole, the environment within the company is hostile and that the company was on notice of and was negligent regarding the systemic problem."); *supra* Part III.C.4. In Phase II, however, the jury will be asked to determine (1) whether particular plaintiffs subjectively perceived the environment to be hostile or abusive, and (2) if so, whether such plaintiffs can establish a basis for individual liability. *See Foster Wheeler*, 1999 WL 528200, at *3; *Mitsubishi*, 990 F.Supp. at 1074 n. 7, 1080–81;[19] *see also McDonnell Douglas*, 960 F.Supp. at 205 ("At the damages trial, the question is whether the individual class members are entitled to relief."). Thus, it seems to me that the *Mitsubishi* bifurcation model "is reasonable in terms of the nature of the 'pattern or practice' case, is likely to produce efficiencies in case management by limiting the initial presentation to the objective case that each and every claimant must meet as a general group, and avoids the constitutional problems of reexamination of factual issues." *See Foster Wheeler*, 1999 WL 528200, at *3; *see also McDonnell Douglas*, 960 F.Supp. at 205 (observing that " 'pattern-or-practice' employment discrimination cases are routinely bifurcated" (citation omitted)). I therefore conclude that bifurcation is both appropriate and permissible under the Seventh Amendment.

6. *April 23, 1991, Settlement Agreement*

On April 23, 1991, the EEOC and Dial entered into a settlement agreement with respect to a charge of class-wide sexual harassment filed by one of the class members. *See* Defendant's Statement of Facts ¶ 196, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶ 196, filing 175. Dial contends that the EEOC, in processing this charge, "had the opportunity to investigate and conciliate a class-based harassment allegation." Defendant's Memorandum at 35, filing 94. In addition, Dial notes that "the agency approved [the charging party's] settlement and release of Title VII claims up to the date of that release." *Id.* Thus, Dial concludes, "[the] EEOC is estopped from now seeking to hold Dial liable for conduct

---

**19.** The *Mitsubishi* court recognized that liability "must be established at both the pattern or practice and individual relief phases." *Mitsubishi*, 990 F.Supp. at 1074 n. 7. According to the court:

A company's notice of a pattern or practice and its notice of individual harassment, although related, involve slightly different inquiries. Similarly, a company's negligence in responding to a systemic problem of sexual harassment requires different findings than those required to hold a company negligent for failing to remedy an individual act of sexual harassment. The Court believes, however, that the establishment of a pattern or practice of unlawful sexual harassment by the company entitles individual claimants to a presumption that the company had notice and was negligent with respect to the individual victims of the pattern or practice.... Having proven that a company is a "wrongdoer" at the pattern or practice phase, because it had notice and was negligent of the systemic problem, certainly justifies such a presumption and places the burden, at least of production, on the company to show that it was not on notice and was not negligent with respect to a particular claimant.

*Id.; see id.* at 1080–81 (recognizing that if the employer does proffer such evidence, "it will be up to the individual plaintiff to satisfy her burden of proof on these elements").

which occurred before April 23, 1991." *Id.* I disagree. As the EEOC correctly notes in its brief, this settlement agreement provided that "[the] EEOC [did] not waive or in any manner limit its right to process or seek relief in any other charge or investigation including, but not limited to, a charge filed by a member of the Commission against [Dial]." *See* Settlement Agreement at 2, Class Member 12 Dep. at Ex. 10 (filing 102, tab 12). Thus, I see no basis for concluding that the EEOC must limit its proof of a pattern or practice to conduct that occurred after April 23, 1991.

### D. *Individual Claims*

#### 1. *Title VII Releases & Doctrine of Ratification*

In its brief, Dial argued that twenty-two members were either fully or partially barred from recovering individual relief because they knowingly and voluntarily signed releases waiving their Title VII rights.[20] Dial also argued that if there was any question as to the validity of these releases, the doctrine of ratification either fully or partially bars the individual claims

of these class members. However, it seems to me that, based on the following language from its reply brief, Dial has abandoned these arguments for purposes of summary judgment:

> Because there are so many other reasons that the claims should be dismissed and given page limitations, Dial will not press at this stage its argument that summary judgment should be granted on the individual claims of those class members who signed releases.... In the event this case were to ever reach a Phase II individualized hearing stage, Dial reserves the right to again raise the issue of whether the 22 damage claims should be dismissed prior to any hearings because the releases are enforceable as a matter of law or, alternatively, because the 22 claimants failed to tender back the consideration they received for the releases before seeking damages in this action.

*See* Defendant's Reply at 30, 30–31 n. 29, filing 190. I therefore see no reason to address these issues at this stage of the litigation.[21]

---

**20.** In April of 1998, Dial apparently offered a voluntary separation program (hereinafter VSP) to eligible hourly and salaried employees at the Aurora facility. Dial asserts that twelve class members waived their Title VII rights by signing releases pursuant to this VSP, and seven other class members waived their Title VII rights under individual separation agreements. *See* Defendant's Memorandum at 36–37, filing 94. Dial also asserts that three additional class members signed releases while still employed, thus barring them from recovering damages for incidents up to the dates of their respective releases. *Id.* at 37.

The Seventh Circuit has explained that "when an employee challenges his assent to a release as not being knowing and voluntary, a court must examine the 'totality of circumstances' surrounding the execution of the release." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,* 65 F.3d 562, 571 (7th Cir.1995) [hereinafter *Pierce I* ]; *see also Pierce v. Atchison*

*Topeka & Santa Fe Ry. Co.,* 110 F.3d 431, 438 (7th Cir.1997) [hereinafter *Pierce II* ] ("Knowing and voluntary consent is therefore a prerequisite to the effectiveness of waivers of federal antidiscrimination claims."). In challenging her assent, an employee "must come forward with specific evidence sufficient to raise a question as to the validity of the release ...." *Pierce II,* 110 F.3d at 438; *see Pierce I,* 65 F.3d at 572 ("[A]fter the employer raises the existence of a release as a defense to a discrimination suit, the burden rests on the plaintiff to challenge specifically his voluntary and knowing consent to the release."). "[B]ald assertion[s]" will not suffice. *See Pierce I,* 65 F.3d at 572. Once the employee has made the requisite showing, the employer then bears the burden of proving that the release was knowing and voluntary. *See Pierce II,* 110 F.3d at 437–38.

**21.** In its response, the EEOC contends that genuine issues of material fact preclude a finding that the releases were "knowing and

### 2. Merits of the Individual Class Members' Claims

Dial also moves for summary judgment with respect to the class members' individual claims for relief. According to Dial, most of the individual claims fail for one or more of the following reasons: (1) the individual acknowledged during her deposition that she had never been sexually harassed at Dial and/or that she was making no such claim in this case; (2) the individual's allegations are time-barred; (3) the acts complained of do not rise to the level of severe or pervasive conduct; or (4) there is no basis to hold Dial liable for the alleged misconduct.[22] In response, the EEOC asserts that "[w]hether particular class members are entitled to individual relief is not now the point." Plaintiff's Memorandum at 47, filing 174; see also id. ("[A] given individual's right to monetary relief at the remedial phase of this lawsuit cannot properly be determined now, on Dial's motion for summary judgment"); Teamsters, 431 U.S. at 361, 97 S.Ct. 1843 ("[A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination."). Alternatively, the EEOC contends that the timeliness of the individual claims cannot be determined at this stage of the litigation. See Plaintiff's Memorandum at 47, filing 174. After reviewing the evidence, I find that Dial's motion for summary judgment with respect to the class members' individual claims for relief will be granted in part and denied in part.

As an initial matter, I agree with the EEOC that certain issues need not be determined at this time. Dial's arguments with respect to liability and the severity of the misconduct require an individual analysis of each class member's allegations. Many of the individual claims, however, appear to hinge on a finding of pattern-or-practice liability. Without such a finding, 42 U.S.C. § 2000e–5(e)'s 300–day limitation period would likely eliminate the individual claims of several class members. Thus, in the interests of judicial economy and efficiency, I will not address these two arguments at this stage of the litigation. Instead, I will permit Dial to raise these issues again at the conclusion of the pattern-or-practice phase, should Dial elect to do so.

---

voluntary." See Plaintiff's Memorandum at 48–52, filing 174. With respect to those women who allegedly waived their rights pursuant to the 1998 VSP, the EEOC alleges that these women (1) were pressured and misled into accepting the VSP; (2) did not understand that they were releasing their Title VII rights; (3) were inexperienced in business matters and were not well-educated; and (5) did not receive any consideration for the release of their Title VII rights. See id. at 50–52. The EEOC asserts that "[m]any of these same problems also surround the releases executed by the remaining class members Dial seeks to keep from recovering damages for the harassment they endured at Dial." Id. at 52. In its reply brief, Dial argues that the EEOC's "fact-intensive" contentions with respect to the releases "only serve to further emphasize that allowing individual class member claims to proceed as a pattern and practice case would be impossible to manage." Defendant's Reply at 30–31, filing 190. I disagree. Whether these waivers were knowingly and voluntarily executed will simply be another issue for the fact finder in Phase II of the proceedings, provided that these issues are not disposed of beforehand. See id. at 30–31 n. 29, filing 190 (asserting that it reserves the right to again raise these issues if this case should ever reach a Phase II individualized hearing stage).

22. Dial summarizes its arguments with respect to the individual claims in two charts, one included in its memorandum and the other included as an exhibit to its reply memorandum. See Defendant's Memorandum at 31–35, filing 94; Defendant's Reply at Ex. A, filing 190.

### a. *Exposure to Sexual Harassment*

 According to Dial, several of the class members admitted during their respective depositions that they had never been sexually harassed at Dial and/or that they were making no such claim in this case. *See* Defendant's Memorandum at 31–35, filing 94. As an initial matter, I find that Dial's argument must fail with respect to Class Members 2, 6, and 34.[23] All three of these class members testified that they were subjected to harassing conduct and/or comments while working at the Aurora plant. *See, e.g.,* Deposition of Class Member 2 at 26:3–31:10 (filing 176, tab 3); Deposition of Class Member 6 at 48:2–49:9, 55:17–57:2, 58:17–59:23, 61:24–62:6, 88:22–92:7, 103:9–106:12, 106:21–117:5, 118:21–125:14, 140:16–143:6 (filing 176, tab 7); Deposition of Class Member 34 at 82:20–83:4, 89:3–24, 94:14–95:8 (filing 176, tab 32). Thus, their claims for individual relief will not be dismissed.

Dial also contends that additional class members should be dismissed because their claims are based solely on allegations of "sex-based harassment," rather than "sexual harassment."[24] During their depositions, several women indicated that although they did not believe they had been sexually harassed, they had experienced sex-based harassment at the Aurora plant. *See* Deposition of Class Member 25 at 21:6–22 (filing 176, tab 24); Deposition of Class Member 37 at 4:6–13, 22:8–23:6 (filing 176, tab 35); Deposition of Class Member 60 at 27:6–28:8, 30:23–31:4 (filing 176, tab 57);[25] Deposition of Class Member 70 at 27:3–13, 48:11–13 (filing 176, tab 66); Deposition of Class Member 84 at 35:16–42:19 (filing 176, tab 79);[26] Deposition of

23. I have assigned the class members numbers based on the numbering system established by Dial in the chart included with its memorandum. *See* Defendant's Memorandum at 31–35, filing 94.

24. Sexual harassment is generally defined as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature ... [when] such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *See* 29 C.F.R. § 1604.11(a); *Meritor,* 477 U.S. at 65, 106 S.Ct. 2399; *see also infra* note 30 and accompanying text (discussing the different forms of sex discrimination).

25. In its statement of facts, Dial asserts that Class Member 60 was not subjected to sexual harassment during her employment. *See* Defendant's Statement of Facts ¶ 594, filing 96. The EEOC denies this, noting that this class member testified as to seeing a picture of the chest of a women in a blue sweater at some time during the mid 1980's, when a Best Breast contest was held during a union lockout. *See* Plaintiff's Response to Defendant's Statement of Facts ¶ 594, filing 175. In its reply, Dial urges me to disregard the above testimony relating to the Best Breast contest since Class Member 60 did not participate in this contest and has no personal knowledge as to whether the contest took place, other than seeing the one picture. *See* Defendant's Reply to Plaintiff's Response ¶ 594, filing 192. I am inclined to agree with Dial, since there is no indication that Class Member 60 subjectively perceived this incident as harassment. Furthermore, during the deposition, the EEOC's attorney began her cross-examination by noting that Class Member 60 "testified that [she was not] sexually harassed while [she was] at the Dial Corporation." *See* Deposition of Class Member 60 at 30:23–31:3 (filing 176, tab 57). It therefore appears to me that Class Member 60's individual claim is based exclusively on allegations of sex-based harassment.

26. Class Member 84 testified about one incident involving her female supervisor, but admitted that she did not feel the conduct she complained of was directed at her because of her sex. *See* Deposition of Class Member 84 at 28:24–32:11, 36:6–10 (filing 176, tab 79). This class member also testified as to a temporary job reassignment, when her supervisor transferred a *younger female* into her position for two days. *See id.* at 35:16–38:23. Although this class member characterized the reassignment as sex-based harassment, I agree with Dial that the incident does not support a claim of either sexual harassment

Class Member 99 at 51:2–6, 64:17–23, 75:6–11, 76:4–14 (filing 176, tab 92). According to these women, such sex-based harassment included the following: (1) a supervisor's failure to share information regarding scheduling and company goals with a class member when this supervisor shared such information with the class member's male counterparts (Deposition of Class Member 25 at 26:17–27:11, 28:16–29:2, 32:13–19, 33:11–37:1 (filing 176, tab 24)); (2) the "much more free flowing" relationship that male mechanics had with their male supervisors as compared to their relationship with a class member supervisor (Deposition of Class Member 25 at 22:3–23:1 (filing 176, tab 24)); (3) the segregated work environment in which men received more favorable assignments than women (Deposition of Class Member 37 at 23:16–28:10 (filing 176, tab 35)); (4) the pay differential between the predominantly male mechanics, known as line specialists, and the predominantly female line operators, and the division of responsibilities between these two positions (Deposition of Class Member 37 at 30:21–34:11, 35:19–37:17 (filing 176, tab 35); Deposition of Class Member 70 at 27:5–35:23 (filing 176, tab 66); Deposition of Class Member 84 at 42:16–44:11 (filing 176, tab 79); Deposition of Class Member 99 at 64:17–65:4 (filing 176, tab 92)); (5) pay differentials in other departments (Deposition of Class Member 60 at 30:23–38:10, 45:17–49:5 (fil-

ing 176, tab 57)); and (6) the Mens Social Club, which apparently existed at Dial until about 1986, when the name was changed and the club opened its membership to women (Deposition of Class Member 60 at 41:4–21 (filing 176, tab 57)).[27] According to Dial, the above allegations "are not like or reasonably related to Allen's individual hostile environment allegations," and should therefore be excluded from this litigation. *See* Defendant's Memorandum at 10 n. 7, filing 94; *see also id.* at 30 n. 22 (characterizing the sex-based harassment allegations as disparate treatment claims and arguing that none of the class members suffered any "materially adverse employment action"). I agree with Dial in part.

As discussed above, the EEOC may seek relief for whatever unlawful conduct it uncovers during the course of investigating an individual's charge, "provided that there is a reasonable nexus between the ... charge and the subsequent allegations in the complaint." *See Walner,* 91 F.3d at 968 (citations omitted). The Fourth Circuit has explained that:

[T]he original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, *provided such discrimination was included in the*

or sex discrimination. *See id.* at 39:13–40:10; Defendant's Reply to Plaintiff's Response ¶ 822, filing 192.

27. There is some question as to whether this club was even sponsored by Dial. *See* Plaintiff's Response to Defendant's Statement of Facts ¶ 594, filing 175; Defendant's Reply to Plaintiff's Response ¶ 594, filing 192 (arguing that the EEOC's assertions regarding the existence of this club are immaterial because "there is no suggestion that Dial sponsored this Social Club"); *see also Cowan v. Prudential Ins. Co.,* 141 F.3d 751, 758 (7th Cir.1998)

("[T]he fact that some co-workers decided to associate with others outside of work by golfing or fishing does not constitute sex discrimination, much less create a hostile work environment (unless of course it was a company-sponsored event from which the women were excluded). That is true even if the men only want to associate with other men in their free time." (citing *Bedard v. Roger Williams Univ.,* 989 F.Supp. 94 (D.R.I.1997) (recognizing that "federal anti-discrimination laws simply do not provide a remedy for ... social isolation and exclusion from outings which took place outside the scope of employment"))).

*reasonable cause determination of the EEOC* and was followed by compliance with the conciliation procedures fixed in the Act.

*General Elec. Co.*, 532 F.2d at 366 (emphasis supplied), *cited with approval in General Tel. Co.*, 446 U.S. at 331, 100 S.Ct. 1698; *see also Cheek*, 31 F.3d at 501 (recognizing that "an employer may discriminate on the basis of sex in numerous ways"). In this case, the EEOC's reasonable cause finding pertained only to sexual harassment. *See* Letter of Determination, Banas Decl. at Ex. 1 (filing 98, tab Z) (finding "reasonable cause to believe that [Dial] discriminated against females, as a class, including [Beverly Allen], in that they were subjected to sexual harassment and when they complained [Dial] failed to take prompt, effective action"). There is no mention of any other form of sex discrimination in the Letter of Determination. *See, e.g., DeClue v. Central Illinois Light Co.*, 223 F.3d 434, 437 (7th Cir.2000) (explaining that sexual harassment "is remote ... from a simple refusal to hire women, from holding them to higher standards than their male coworkers, or from refusing to make accommodations for differences in upper-body strength or . other characteristics that differ systematically between the sexes"); *Cowan v. Prudential Ins. Co.*, 141 F.3d 751, 759 (7th Cir.1998) (concluding that allegations that male employees were treated better than female employees, such as alleged incident in which plaintiff's supervisor worked more intensively with a new employee than he did with her, could not support hostile work environment sexual harassment claim, although such allegations could potentially support claim of disparate treatment discrimination); *see also infra* note 30 (discussing, *inter alia*, the *DeClue* and

*Cowan* decisions). I therefore agree with Dial that the EEOC should be barred from expanding its theory of recovery to include the above instances of sex-based harassment. Thus, Dial's motion for summary judgment will be granted, to the extent it seeks to dismiss the individual claims for relief of Class Members 25, 37, 60, 70, 84, and 99.

On a related note, two class members indicated that although they were not sexually harassed while at the Aurora plant, they were subject to sex-based harassment in connection with Dial's 1998 voluntary separation program (hereinafter VSP).[28] *See* Deposition of Class Member 9 at 17:24–18:14 (filing 176, tab 9); Deposition of Class Member 52 at 19:15–20:14 (filing 176, tab 50). According to Dial, it offered this program to all eligible hourly and salaried employees at the Aurora plant, both male and female. *See* Defendant's Statement of Facts ¶ 92, filing 96. The EEOC disputes this assertion, claiming that Dial's management "targeted women to take the buyout." *See* Plaintiff's Response to Defendant's Statement of Facts ¶ 93, filing 175; *see also* Deposition of Class Member 9 at 19:15–20, 27:11–28:7, 38:13–41:14, 44:22–46:6 (filing 176, tab 9) (testifying as to meetings in which employees were allegedly advised that if they remained at Dial, their jobs would include several additional, physically-demanding duties); Deposition of Class Member 52 at 38:6–39:11 (filing 176, tab 50) (testifying as to supervisor's warning that after the buyout, the class member's job hours would be changed and she may be required to report to work at 4:00 a.m. or 6:00 a.m.); *id.* at 63:12–65:6 (testifying as to incident where a Dial manager specifically asked class member if she was going to partici-

---

**28.** For a brief discussion of this program and Seventh Circuit authority regarding the valid- ity of releases, see *supra* note 20.

pate in the VSP). The individual claim of Class Member 22 is also apparently based solely on Dial's alleged efforts to target women in seeking VSP participants. *See* Defendant's Statement of Facts ¶¶ 285–286, filing 96; Plaintiff's Response to De-

fendant's Statement of Facts ¶¶ 93, 285–286, filing 175.[29] It seems to me, however, that the EEOC's allegations relating to VSP are also outside the scope of its reasonable cause determination.[30] Thus, for

**29.** This class member was not deposed, and the EEOC has not provided a declaration from this individual *See* Defendant's Memorandum at 31 n.c, 32, filing 94; Appendix to Plaintiff's Response to Defendant's Local 56.1 Statement of Material Facts and to Plaintiff's Statement of Additional Facts at Index, filing 176.

**30.** In its response, the EEOC asserts that in this case, "there are ... disputed issues of fact regarding whether Dial's 1998 Buyout was itself part of the pattern or practice of harassment against its female employees that contributed to the hostile work environment at issue here." *See* Plaintiff's Memorandum at 52, n. 26, filing 174 (emphasis in original) (citation omitted). The Seventh Circuit, however, has recognized the following:

> Sexual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts either by coworkers or supervisors to make the workplace intolerable or at least severely and discriminatorily uncongenial to women ("hostile work environment" harassment), and also efforts (normally by supervisors) to extract sexual favors by threats or promises ("quid pro quo" harassment).... It is a form of, rather than a synonym for, sex discrimination. It is remote, for example, from a simple refusal to hire women, from holding them to higher standards than their male coworkers, or from refusing to make accommodations for differences in upperbody strength or other characteristics that differ systematically between the sexes....
>
> The requirements for proving, and the defenses to, charges of sexual harassment have been configured in light of the distinct nature of that form of sex discrimination....
>
> Of course, as a purely semantic matter, it might be possible to argue that an employer who fails to correct a work condition that he knows or should know has a disparate impact on some class of his employees is perpetuating a working environment that is hostile to that class. But if this argument were accepted it would make disparate im-

pact synonymous with hostile work environment, erasing the important distinctions [between these two forms of sex discrimination].

*DeClue*, 223 F.3d at 437. Here, it seems to me that the EEOC is attempting to make "disparate [treatment] synonymous with hostile work environment," a result that the Seventh Circuit simply does not permit. *See id.; see also* Plaintiff's Response to Defendant's Statement of Facts ¶ 93, filing 175 (asserting that "Dial targeted women to take the buyout in 1998, and encouraged male mechanics to make these women's jobs more difficult in order to pressure them into accepting it"); *Cowan*, 141 F.3d at 759 (concluding that allegations that male employees were treated better than female employees, such as alleged incident in which plaintiff's supervisor worked more intensively with a new employee than he did with her, could not support hostile-work-environment sexual harassment claim, although such allegations could potentially support claim of disparate treatment discrimination); *Sweeney v. West*, 149 F.3d 550, 555 (7th Cir.1998) ("Of course workplace abuse does not *have* to be sexually explicit or suggestive to violate Title VII. A Title VII violation could occur if the abuse altered the plaintiff's working conditions and was directed at members of one sex but not the other. The statutes and case law clearly prohibit disparate treatment between sexes." (emphasis in original)). *But see Curde v. Xytel Corp.*, 912 F.Supp. 335, 340 (N.D.Ill.1995) (concluding that "the most recent statements by the Seventh Circuit dispel the notion that hostile environment claims are limited solely to situations involving conduct of a sexual nature; rather, actionable harassment 'encompasses *all forms of conduct* that unreasonably interfere with an individual's work performance or create[ ] an intimidating, hostile, or offensive work environment.'" (emphasis in original) (citing *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994); *Meritor*, 477 U.S. at 64, 106 S.Ct. 2399; *Carr v. Allison Gas Turbine Div.*, 32 F.3d 1007, 1009 (7th Cir.1994))).

the reasons outlined above, I shall also dismiss the individual claims of these three class members.

In addition, Dial suggests that the individual claims of Class Members 27 and 57 must be dismissed. These class members participated in Dial's VSP and were not deposed by Dial. *See* Declaration of William Jensen ¶¶ 11, 15 & Ex. 22, 25 (filing 98, tab BB). In responding to Dial's motion, the EEOC included declarations from these two class members in its appendix. *See* Declaration of Class Member 27 (filing 176, tab 115); Declaration of Class Member 57 (filing 176, tab 120). These declarations include allegations of sexual harassment. *See* Declaration of Class Member 27 ¶ 2 (filing 176, tab 115); Declaration of Class Member 57 ¶ 2 (filing 176, tab 120). Dial, however, urges me to disregard these declarations, as both are unsigned and undated. *See* Defendant's Response to Plaintiff's Statement of Additional Facts ¶¶ 45–48, 114–116, filing 191; 28 U.S.C. § 1746 (requiring unsworn declarations to be signed and dated). While I acknowledge that Seventh Circuit authority certainly permits me to ignore unsigned declarations, I am inclined to afford the EEOC an opportunity to correct these procedural defects, particularly in light of the fact that Dial's objections to the declarations are buried within its response to the Plaintiff's Statement of Additional facts. *See, e.g., Sellers v. Henman,* 41 F.3d 1100, 1101 (7th Cir.1994); *DeBruyne v. Equitable Life Assurance Soc'y,* 920 F.2d 457, 471 (7th Cir.1990); *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1255 n. 13 (7th Cir.1990); *see also Contreras v. Sun-*

*cast Corp.,* 237 F.3d 756, 766 (7th Cir. 2001), *cert. filed,* No. 00–1877 (May 14, 2001) (concluding that the district court did not abuse its discretion in allowing the defendant "to resubmit four affidavits to cure the procedural defect that they had been originally notarized by . . . a party to the lawsuit"). The immense amount of paperwork submitted in connection with this motion, while not an excuse for the EEOC's errors, certainly renders such errors understandable. I will therefore grant the EEOC twenty days from the date of this order to cure the procedural defects with respect to the declarations of Class Members 27 and 57. If the EEOC fails to cure these defects, Dial's motion for summary judgment will be granted as to the individual claims of Class Members 27 and 57, as there is no admissible evidence in the record indicating that these two individuals were subject to sexual harassment while working at Dial.

Finally, two class members testified that they did not believe that they had been subjected to any sexual harassment or sex-based harassment at the Aurora plant. *See* Deposition of Class Member 20 at 21:13–24, 36:19–37:15 (filing 176, tab 20) (indicating that she did not intend to seek individual relief in the present lawsuit); Deposition of Class Member 63 at 29:6–9, 30:3–8 (filing 176, tab 59) (explaining that her complaint was with Dial's management structure). These class members' claims for individual relief will therefore be dismissed.[31] One other individual, Class Member 98, worked at Dial less than a week and did not appear for her scheduled deposition. *See* Defendant's Statement of

---

[31]. My ruling with respect to Class member 20's individual claim for relief does not affect the EEOC's ability to call her as a witness during the pattern-or-practice phase of the proceedings. *See* Deposition of Class Member 20 at 38:4–13, 39:8–12 (filing 176, tab 20) (indicating that from about 1974 to 1985, she saw pictures of women who wore

"[v]ery little clothes," and women who were "well-stacked" and "skimpy [sic] dressed"); *Mitsubishi,* 990 F.Supp. at 1087–88 (barring certain plaintiffs from participating in the individual relief phase, but noting that such individuals would nevertheless be permitted to offer "anecdotal evidence" as part of the pattern-or-practice case).

Facts ¶¶ 949–950, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶¶ 949–950, filing 175. Dial apparently attempted to reschedule the deposition, but the EEOC did not respond. *See* Defendant's Statement of Facts ¶ 950, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶ 950, filing 175. There does not appear to be anything in the record regarding this class member's alleged exposure to sexual harassment. Nor does there appear to be any evidence relating to Class Member 94's experiences at the Aurora plant. *See* Defendant's Statement of Facts ¶¶ 914–916, filing 96; Plaintiff's Response to Defendant's Statement of Facts ¶¶ 914–16, filing 175 (indicating that Class Member 94 left Dial in 1996 and accepted Dial's voluntary separation package). Thus, the individual claims for relief of Class Members 94 and 98 will also be dismissed.

For the reasons outlined above, Dial's motion for summary judgment will be granted, to the extent it seeks to dismiss the individual claims for relief of Class Members 9, 20, 22, 25, 37, 52, 60, 63, 70, 84, 94, 98, and 99, and denied, to the extent it seeks to dismiss the individual claims for relief of Class Members 2, 6, and 34.[32] With respect to Class Members 27 and 57, the EEOC shall have 20 days from the date of this order to cure the procedural defects associated with their declarations. If the EEOC fails to cure such defects within this time frame, summary judgment

will be granted as to the individual claims for relief of these two class members

### b. *Timeliness*

Next, Dial moves to dismiss several of the class members' individual claims as untimely. Noting that Beverly Allen filed her EEOC charge on February 5, 1996, Dial asserts that the 300–day limitations period of § 2000e–5(e) bars class members from obtaining individual relief for events that occurred before April 5, 1995. Dial also argues that the EEOC is precluded from relying on the "continuing violation" doctrine as a means of avoiding the 300–day filing requirement. Thus, Dial concludes, the individual claims based solely on pre-April 5, 1995, conduct must be dismissed as time-barred.

According to the EEOC, however, the timeliness of the class members' individual claims cannot be evaluated at this stage of the litigation. In support of this assertion, the EEOC directs me to the *Mitsubishi* court, which found that a "a § 707 [§ 2000e–6] pattern or practice case is not subject to a limitations period." *See Mitsubishi*, 990 F.Supp. at 1084; *see also id.* at 1085 (concluding that "the limitations period applicable to § 706 [§ 2000e–5] actions does not apply to § 707 [§ 2000e–6] cases, despite the language of § 707(e), which mandates adherence to the other procedural requirements of § 706" (citation omitted)). After rejecting arguments similar to those now raised by Dial,[33] the

32. In footnote to its initial chart, Dial requests "its attorneys' fees and other litigation costs pursuant to Fed.R.Civ.P. 11 in connection with having to depose [several individuals who do not allege that they were sexually harassed] and to address their claims on summary judgment." *See* Defendant's Memorandum at 31 n. b, filing 94. If and when Dial files a motion seeking such relief, I shall address this issue.

33. Mitsubishi argued that (1) § 2000e–5(e)'s timing requirement cut off all individual

claims that had not been filed with the EEOC within 300 days before the Commissioner's charge was filed; (2) the Commissioner's charge was controlling for purposes of analyzing the timeliness of the discrimination claims of those class members who did not file their own charges with the EEOC or IDHR; (3) this timing requirement also barred the claims of those class members who (a) left the company more than 300 days before the Commissioner filed his charge, and (b) did not complain to the company about harassment within the 300–day window; and

*Mitsubishi* court elected to "let the evidence of a pattern or practice determine the relevant 'limits' for the lawsuit," explaining as follows:

> Once the EEOC establishes that a pattern or practice exists, in Phase I, this evidence will determine when the provable pattern or practice began. Any individual claims that fall within that period will be allowed to proceed to the individual relief stage. This method will honor the "continuing violation" nature of the pattern or practice case, without applying the exception as it is traditionally conceived.

*Id.* at 1087. Thus, the EEOC urges me to adopt the rationale of the *Mitsubishi* court and reject Dial's arguments as to the timeliness of certain claims. I am inclined to agree with the EEOC.

In adopting the approach outlined above, however, I must also address what may initially appear to be an important procedural difference between this case and *Mitsubishi*. As Dial correctly notes in its brief, *Mitsubishi* arose from a commissioner's charge. *See* Defendant's Memorandum at 24, filing 94 (arguing that the premises of *Mitsubishi* do not apply to the present case). The *Mitsubishi* decision refers frequently to this fact in its discussion of the limitations question. *See, e.g.*,

*Mitsubishi*, 990 F.Supp. at 1083–84 (noting that it was unable to locate any authority "which definitively holds that there is any limitations period applicable to a § 707 [§ 2000e–6] *pattern or practice* case initiated by the filing of a Commissioner's charge" (emphasis in original)); [34] *id.* at 1085 (recognizing that "[a] Commissioner's charge alleging a pattern or practice ... involves a continuing violation that occurs over time"); *id.* at 1086 (observing that "[b]y its nature, the Commissioner's charge alleging a pattern or practice of sexual harassment is not filed within 300 days of any particular incident of sexual harassment, because it is not based on an individual charge, but rather on the evidence gathered over a course of time showing a pattern of harassment against many individuals" (citation omitted)); *id.* (noting that "in a § 707 case there is only the Commissioner's charge, filed at a single point in time, but alleging discrimination which has a durational and 'continuing' aspect that precedes any particular 'limitations period' "); *id.* (observing that "in a § 707 case, the Commissioner's charge can allege a variety of discriminatory conduct experienced by a wide-range of individuals, based on its investigation; the Commissioner is not limited to the conduct which an individual charge alleges, as is the case in a § 706 case"). [35] Nevertheless,

---

(4) the complaints of harassment it did receive and did address prior to the 300–day window were not actionable. *See Mitsubishi*, 990 F.Supp. at 1083.

**34.** The court also noted, however, that "[t]here is some support in the case law for the proposition that the limitations period of § 706 does not apply in a pattern or practice case brought under § 707." *Mitsubishi*, 990 F.Supp. at 1085 (citing *Walner*, 91 F.3d at 968; *EEOC v. Continental Oil Co.*, 393 F.Supp. 167, 170 (D.C.Colo.1975); *United States v. Fresno Unified School Dist.*, 592 F.2d 1088, 1096 (9th Cir.1979); 4 Lex K. Larson & Arthur Larson, Employment Discrimination § 75.02[2] (2d ed.1997)); *see also supra* note 12 and accompanying text (discussing the

*Walner* decision, which seems to suggest that a § 2000e–6 pattern-or-practice case does not require a valid charge filed in a "timely" manner).

**35.** The court also stated the following:

> Although both a § 706 [§ 2000e–5] case and a § 707 [§ 2000e–6] case can be filed by the EEOC in its own name and initiated by a "Commissioner's charge," rather than an individual charge, the converse is not true. *A § 707 case cannot be initiated by a individual charge*, and it cannot be filed as a civil suit by an individual.

*Mitsubishi*, 990 F.Supp. at 1084 (citing *General Tel. Co.*, 446 U.S. at 327, 100 S.Ct. 1698) (emphasis supplied). I respectfully disagree with the italicized language above. Section

I am persuaded that the *Mitsubishi* court's underlying rationale applies with equal force here, where there is a "reasonable nexus" between Allen's individual charge of sexual harassment and the EEOC's pattern-or-practice allegations. *See supra* Part III.C.1; *Walner,* 91 F.3d at 968 ("[The] EEOC may allege in a complaint whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint." (citations omitted)). As the court observed, "the very nature of a pattern or practice case attacking systemic discrimination by a company seems to preclude the application of a limitations period." *See Mitsubishi,* 990 F.Supp. at 1084. Thus, it seems to me that with respect to the individual claims, "the application of a limitations period in a § 707 [§ 2000e–6] action does not make intuitive or legal sense," regardless of whether the action is predicated on a commissioner's charge or an individual's charge. *See id.* It also seems to me that in pattern-or-practice litigation, the 300–day requirement is arbitrary as to these individual claims since "the purpose

of the limitations period is to prevent the filing of stale claims," and, as the *Mitsubishi* court recognized:

> [W]here as here, a plaintiff attacks a rule *or policy that continued to exist right up into the limitations period,* concerns about prejudice to the defendant are absent or diminished ... the continued nature of the policy represents its affirmative perpetuation ... and is susceptible to characterization as a conscious waiver of limitations period protection ... "Simply put, an employer that maintains a continuing violation neither deserves nor obtains repose."

*United States EEOC v. City of Chicago,* No. 85 C 7281, 1989 WL 134788, at *9 (N.D.Ill. Oct.13, 1989) (emphasis supplied) (quoting *EEOC v. Home Ins. Co.,* 553 F.Supp. 704, 712 (S.D.N.Y.1982), *quoted in Mitsubishi,* 990 F.Supp. at 1087; *Mitsubishi,* 990 F.Supp. at 1085).[36] In short, the EEOC has persuaded me that the timeliness of the class members' individual claims cannot be determined at this stage of the litigation; rather, "[o]nce the evidence establishes either the existence or the nonexistence of a pattern or practice, the trier of fact will be able to determine

---

2000e–6 provides, in relevant part, that "the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, *whether filed by* or on behalf of *a person claiming to be aggrieved* or by a member of the Commission." *See* 42 U.S.C. § 2000e–6(e) (emphasis supplied).

**36.** Based on the italicized language, it appears that the timing requirement of § 2000e–5(e) is not wholly irrelevant in pattern-or-practice litigation. In order to "save the individual claims from a statute of limitations bar," the pattern or practice of discrimination must have extended into the applicable limitations period. *See Mitsubishi,* 990 F.Supp. at 1087; *see also Jenson,* 824 F.Supp. at 878 ("If Plaintiffs establish that Eveleth Mines maintained a company-wide pattern or practice of sexual harassment both before and after *December 30, 1983,* Eveleth Mines will be liable

for acts of sexual harassment reaching back to the commencement of that policy, which Plaintiffs allege to be 1975." (emphasis supplied)); *Jenson v. Eveleth Taconite Co.,* 139 F.R.D. 657, 666 (D.Minn.1991) ("[T]he class period shall be deemed to commence on *December 30, 1983,* 300 days prior to plaintiff Jenson's EEOC charge." (emphasis supplied)); *Sears, Roebuck & Co.,* 490 F.Supp. at 1260–61 (concluding that § 2000e–5(e)'s 180–day limitations period applied to § 2000e–6(c) pattern and practice suit in that the pattern or practice of discrimination must have extended into the 180–day period); *Rymer,* 1989 WL 88243, at *2 (concluding that "[b]ecause the EEOC alleges a continuous pattern of discrimination against blacks that began in 1979 and extended through the 300 day filing period, all blacks who suffered discrimination during this period may become class members" (citations omitted)).

when the pattern or practice actually began and, therefore, who the individuals who were victims of such a pattern or practice actually are for purposes of a statutory bar." *Mitsubishi,* 990 F.Supp. at 1087. Thus, Dial's assertions regarding the timeliness of several class members' individual claims must fail.[37]

## IV. Conclusion

In resolving Dial's motion for summary judgment, I have reached the following conclusions: (1) the EEOC fulfilled Title VII's requirements with respect to notice and conciliation; (2) Beverly Allen's charge provides a sufficient basis for the EEOC's pattern-or-practice suit; (3) a pattern-or-practice action can be brought, both as a general matter and in this case, for sexual harassment claims under §§ 706 and 707 of Title VII; (4) genuine issues of material fact remain as to whether Dial engaged in a pattern or practice of maintaining an environment sexually hostile to women; (5) the *Mitsubishi* bifurcation model does not violate the Seventh Amendment; (6) Dial's April 23, 1991, settlement agreement with the EEOC does not limit the EEOC's proof to post-April 23, 1991, conduct; (7) for purposes of this motion, Dial has abandoned its arguments relating to Title VII releases and the doctrine of ratification; (8) with respect to the individual claims for relief, Dial's arguments relating to liability and the severity of the alleged misconduct are premature; (9) the timeliness of the class members' individual claims cannot be determined at this stage of the litigation; and (10) the individual claims for relief of Class Members 9, 20, 22, 25, 37, 52, 60, 63, 70, 84, 94, 98, and 99 will be dismissed, as these individuals were not subjected to actionable sexual harassment while working at the Aurora plant.

IT IS ORDERED that the Defendant's Motion for Summary Judgment, filing 70, is granted in part and denied in part.

IT IS FURTHER ORDERED that:

(1) the individual claims for relief of Class Members 9, 20, 22, 25, 37, 52, 60, 63, 70, 84, 94, 98, and 99 are dismissed; and

(2) the EEOC shall have 20 days from the date of this order to cure the procedural defects with respect to the declarations of Class Member 27 and 57; if the EEOC fails to cure such defects within this time frame, summary judgment will be granted as to the individual claims for relief of these two class members.

---

**37.** In rejecting Dial's attempt to exclude those individual claims based solely on pre-April 5, 1995, events, I do recognize that "[a]nother significant date is November 21, 1991, when the Civil Rights Act of 1991 took effect." *EEOC. v. Indiana Bell Tel. Co.,* 256 F.3d 516, 520 (7th Cir.2001). This act authorizes compensatory and punitive damages for sex discrimination. *See* 42 U.S.C. § 1981a. Because it is not retroactive, "only ... conduct (and injuries female workers sustained) after that date can lead to compensatory or punitive damages." *Indiana Bell Tel. Co.,* at 520 (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).